RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0043P (6th Cir.)
File Name: 02a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: DOW CORNING
CORPORATION,

*Debtor.*

———————————

CLASS FIVE NEVADA
CLAIMANTS (00-2516); JANET
S. LACY, individually and on
behalf of her minor child,
Andrea Lane Atherton; JAMA
NMI RUSSANO, individually
and as guardian for Richard
Todd Russano; MICHAEL NMI
RUSSANO; ANDREA LANE
ATHERTON, Claimant, a
minor; RICHARD TODD
RUSSANO, a minor (00-2517);
1,300 AUSTRALIAN TORT
CLAIMANTS (00-2518);
MARTHA S. JACOBS
(00-2520); HELEN D.
SCHROEDER (00-2521);
BEATRIX SHISHIDO (00-2522);
PENNSYLVANIA
COORDINATED SILICONE
BREAST IMPLANT LITIGATION

Nos. 00-2516/
2517/2518/2520/
2521/2522/2523/
2524/2525;
01-1001/1102/
1349

1

(00-2523); KAREN L. HUSTEAD (00-2524); CERTAIN FOREIGN CLAIMANTS (00-2525); HARTFORD ACCIDENT AND INDEMNITY COMPANY; HARTFORD FIRE INSURANCE COMPANY; NUTMEG INSURANCE COMPANY; FIRST STATE UNDERWRITERS AGENCY OF NEW ENGLAND REINSURANCE CORPORATION; TWIN CITY FIRE INSURANCE COMPANY; EXCESS INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY (01-1001); UNITED STATES OF AMERICA (01-1102); NEW ZEALAND CLAIMANTS (01-1349),

*Plaintiffs-Appellants,*

*v.*

DOW CORNING CORPORATION, Debtor; OFFICIAL COMMITTEE OF TORT CLAIMANTS; THE DOW CHEMICAL COMPANY; CORNING, INCORPORATED; OFFICIAL COMMITTEE OF PHYSICIAN CREDITORS;

lawyers, especially in the Far East, and (8) reliance upon semi-official medical reports in Europe. The bankruptcy court concluded, based on such evidence, that the claims are "substantially similar." Though the foreign claimants offer countervailing considerations, they have offered no evidence to indicate that the facts relied upon by the bankruptcy court were clearly erroneous. Moreover, we note that all foreign claimants retain the right to pursue full payment of their claims in the Litigation Facility. The fact that foreign claimants maintain the litigation option further supports the finding that the Plan does not treat claims that are in the same class unequally.

IV.

For the reasons set forth above, we AFFIRM the bankruptcy court's determination that the Plan's classification of foreign claimants meets the Bankruptcy Code's requirements. In addition, we AFFIRM the district court's determination that, when there are "unusual circumstances," the bankruptcy court may enjoin non-consenting creditors' claims against a non-debtor to facilitate a Chapter 11 plan of reorganization. However, we REMAND this case to the district court for those matters needing additional findings.

at 660.  Based on such evidence, the bankruptcy court found that "without question, the evidence on the record shows that tort recoveries in the United States tend to be significantly higher than those in foreign jurisdictions."  *Id*. at 661. Though the foreign claimants point to countervailing considerations, their arguments, at best, show that there was conflicting evidence on the factual assumptions underlying the classification scheme.  The foreign claimants have not shown that the facts used to support the separate classifications for foreign and domestic claimants were clearly erroneous.

Second, the various groups of foreign claimants contend that their claims are more valuable than claims originating from other countries in their respective classes.  They argue that the various claims in their class are not "substantially similar" as required by section 1122(a).  They further argue that by giving identical consideration to class members whose claims are of different value, they are not being treated the same as other members of their class in violation of the Code's requirement that claimants within a class be treated equally.  11 U.S.C § 1123(a)(4).  This issue, therefore, turns on whether the Plan improperly places foreign claims that are not "substantially similar" in the same class.  For the following reasons we find that the bankruptcy court's determination that the claims within a given class are "substantially similar" is not clearly erroneous.

The bankruptcy court relied on the testimony of a leading expert in comparative law methodology, Basil Markenisis, who pointed to legal, economic, and cultural factors supporting the bankruptcy court's conclusion that the claims within each class are "substantially similar."  Markenisis discussed (1) the availability of social safety nets in other countries, (2) other countries' reliance on judges as opposed to juries, (3) limitations on punitive damages, (4) unavailability of contingency fees, (5) limitations on strict liability doctrines, (6) cultural factors, (7) reluctance to use

HARTFORD ACCIDENT AND
INDEMNITY COMPANY;
HARTFORD FIRE INSURANCE
COMPANY; NUTMEG
INSURANCE COMPANY; FIRST
STATE UNDERWRITERS
AGENCY OF NEW ENGLAND
REINSURANCE CORPORATION;
TWIN CITY FIRE INSURANCE
COMPANY; EXCESS
INSURANCE COMPANY; FIRST
STATE INSURANCE COMPANY;
CERTAIN LLOYDS OF LONDON
UNDERWRITERS; CERTAIN
LONDON MARKET INSURANCE
COMPANIES,
       *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 99-75799; 99-75923; 99-75924; 99-75925; 99-75927;
99-75929; 99-75958; 99-75960; 99-76007; 99-76008;
99-76063; 00-70176—Denise Page Hood, District Judge.

Argued:  October 23, 2001

Decided and Filed:  January 29, 2002

Before:  MARTIN, Chief Circuit Judge; DAUGHTREY
and MOORE, Circuit Judges.

---

### COUNSEL

**ARGUED:**   John A. White, Jr., WHITE LAW CHARTERED, Reno, Nevada, David B. Goroff, FOLEY & LARDNER, Chicago, Illinois, Stephen H. Weiner, LAW OFFICES OF SYBIL SHAINWALD, New York, New York, Jeffrey Clair, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., for Appellants.   George H. Tarpley, NELIGAN, TARPLEY, STRICKLIN, ANDREWS & FOLEY, Dallas, Texas, for Appellees. **ON BRIEF:** John A. White, Jr., WHITE LAW CHARTERED, Reno, Nevada, William K. Flynn, STRAUSS & TROY, Cincinnati, Ohio, Ralph E. Brubaker, Conyers, Georgia, David B. Goroff, FOLEY & LARDNER, Chicago, Illinois, John P. Kopesky, SHELLER, LUDWIG & BADEY, Philadelphia, Pennsylvania, Stephen H. Weiner, Sybil Shainwald, LAW OFFICES OF SYBIL SHAINWALD, New York, New York, Jeffrey Clair, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., Lewis J. Saul, LEWIS SAUL & ASSOCIATES, Washington, D.C., Alan S. Levin, Incline Village, Nevada, for Appellants.   George H. Tarpley, David L. Ellerbe, NELIGAN, TARPLEY, STRICKLIN, ANDREWS & FOLEY, Dallas, Texas, James C. Schroeder, MAYER, BROWN & PLATT, Chicago, Illinois, H. Jeffrey Schwartz, Mark A. Phillips, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, Mark D. Tucker, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, Jill K. Schultz, NIXON PEABODY, Rochester, New York, Richard McDermott, Leisa J. Hamm, Margaret M. Anderson, LORD, BISSELL & BROOK, Chicago, Illlinois, Jeff H. Galloway, HUGHES, HUBBARD & REED, New York, New York, Kenneth H. Eckstein, Jeffrey Trachtman, KRAMER, LEVIN, NAFTALIS & FRANKEL, New York, New York, for Appellees. Martha S.

domestic claimants.  For the following reasons we hold that the separate classification is not improper.

The Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  This circuit has recognized that section 1122(a), "by its express language, only addresses the problem of dissimilar claims being included in the same class." *In re U.S. Trucking*, 800 F.2d 581, 585 (6th Cir. 1986).  Section 1122(a) does not demand that all similar claims be in the same class.  *Id.*  To the contrary, the bankruptcy court has substantial discretion to place similar claims in different classes.  *Id*.  We have observed that "Congress incorporated into section 1122 . . . . broad discretion to determine proper classification according to the factual circumstances of each individual case." *Id*. at 586.

In this case, the bankruptcy court determined that the evidence supported the factual assumptions upon which the classifications are based, and that given those facts, the Plan's classifications are proper.  For example, the bankruptcy court found the testimony of three widely recognized expert witnesses helpful.  These three expert witnesses had served on the panel for developing the classification scheme used in *Bowling v. Pfizer, Inc.*, (S.D. Ohio 1995).  *Pfizer*'s classification scheme was the model used to develop the scheme in this case.  *Id.*  These expert witnesses explained the *Pfizer* methodology and its relevance to the current case.  They offered quantitative evidence demonstrating that the highest tort awards in various other countries were significantly lower than in the United States.  For example, one expert witness testified that the highest non-pecuniary award in injury cases in Australia is approximately $230,000.  The bankruptcy court found these witnesses credible, in contrast to the foreign claimants' witnesses, who the court found to be "unhelpful." *In re Dow Corning Corp.* 244 B.R.

States prior to the payment of contested claims by the claims administrator. In addition, such protections would provide the United States with recovery rights sufficiently similar to the Canadian governmental payers to ensure equal treatment of Class 15 claimants as required by section 1123(a)(4).

### III.

The next issue we are asked to decide is whether the Plan's classification of foreign claimants meets the Bankruptcy Code's classification requirements. For the following reasons we hold that the Plan's classification of foreign claimants meets the Code's requirements.

Under the Plan, a foreign claimant is defined as someone who (1) is not a United States citizen, (2) is not a resident alien, or (3) did not have his or her medical procedure performed in the United States. *Plan* § 1.67. The Plan creates two classes for foreign claimants. Class 6.1 consists of claimants who are from a country that either (1) belongs to the European Union, (2) has a common law tort system, or (3) has a per capita Gross Domestic Product of greater than 60% of the United States's per capita Gross Domestic Product. Class 6.2 consists of claimants from all other countries. Class 5 generally consists of domestic breast-implant claimants. Class 6.1 claimants receive settlement offers of 60% of analogous domestic claimants' settlements, and Class 6.2 receive settlements of 35% of the domestic claimants' settlements. Members of both classes retain the option to litigate against the Litigation Facility for the full value of the claim should they deem the settlement offer inadequate.

The various groups of foreign claimants argue that their claims are not worth less than those of the domestic tort claimants and, therefore, should not be classified separately from domestic claims. The issue is whether the Plan improperly classifies the foreign claimants separately from

Jacobs, Tempe, Arizona, Helene D. Schroeder, Alexandria, Virginia, Beatrix Shishido, Mililani, Hawaii, Karen L. Hustead, Hesperia, California, pro se.

_____

### OPINION

_____

BOYCE F. MARTIN, JR., Chief Circuit Judge. Years after Dow Corning Corporation filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and following extensive and vigorous negotiations, the third proposed plan of reorganization for Dow was submitted to the bankruptcy court. The bankruptcy court confirmed the Amended Joint Plan of Reorganization for Dow and the district court affirmed the bankruptcy court's Confirmation Order. Certain claimants who voted against the Plan appealed. The first principal issue presented here is whether a bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan under Chapter 11 of the Bankruptcy Code. For the following reasons, we AFFIRM the district court's conclusion that, under certain circumstances, a bankruptcy court may enjoin a non-consenting creditor's claim against a non-debtor to facilitate a Chapter 11 plan of reorganization. However, the factual findings of the bankruptcy court do not demonstrate that such an injunction is appropriate in this case. Therefore, we REMAND to the district court. The second issue presented is whether the Plan's classification of foreign claimants complies with the Bankruptcy Code's classification requirements. For the following reasons we AFFIRM the bankruptcy court's determination regarding the Plan's classification.

I.

For nearly thirty years, Dow was the predominant producer of silicone gel breast implants, accounting for almost fifty percent of the entire market. In addition, Dow supplied silicone raw materials to other manufacturers of silicone gel breast implants.

In the 1980s, certain medical studies suggested that silicone gel may cause auto-immune tissue diseases such as lupus, Scleroderma and rheumatoid arthritis. In 1992, the Food and Drug Administration ordered that silicone gel implants be taken off the market and Dow ceased manufacturing and marketing its silicone implants. Soon thereafter, tens of thousands of implant recipients sued Dow and its two shareholders, the Dow Chemical Company and Corning, Incorporated, claiming to have been injured by auto-immune reactions to the silicone in their implants. Other manufacturers and suppliers of silicone gel implants were named as co-defendants with Dow and its shareholders.

The Judicial Panel on Multidistrict Litigation consolidated the breast implant litigation for administration of pre-trial matters. *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098 (J.P.M.L. 1992). The consolidated litigation led to a proposed $4.225 billion global settlement, which the multidistrict litigation court approved in 1994. *See Lindsey v. Dow Corning Corp.* (In re Silicone Gel Breast Implant Prods. Liab. Litig.), No. CV 92-P-10000-S, Civ. A. No. CV94-P-11558-S, 1994 WL 578353, at *1 (N. D. Ala. Sept. 1, 1994). However, hundreds of thousands more women than anticipated filed claims with the global settlement fund and the settlement collapsed in 1995.

Later that year, Dow filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. In order to reduce its exposure to claims, immediately after it filed for bankruptcy, Dow sought to transfer all of the breast implant

the district court, nonetheless, determined that the United States claims would be paid in full. The district court relied on two legal remedies that it deemed available. First, it determined that the United States may seek an injunction barring disbursements to an individual claimant. The Plan allows Class 15 claimants to seek injunctive or equitable relief "to the extent such relief is available under applicable law." *Plan* § 6.8(b). This is an illusory protection. The United States has no express statutory right to prohibit a third party from paying whomever it chooses, and the Plan does not confer any new affirmative right to injunctive relief. By merely recognizing that such injunctive relief is available to the extent it is already permitted under existing law, the Plan leaves the United States with a highly uncertain and contingent mechanism to protect its interests. Second, the district court determined that the United States could sue a beneficiary after he or she receives payment. This protection is also inadequate to ensure full payment. The United States has no express statutory right under the Federal Medical Care Recovery Act to recover from a beneficiary who receives payment from a third party. 42 U.S.C. §§ 2651-2653. And, even where the United States has a legal right to recover from an individual beneficiary, there is no assurance of full repayment of the health care expenditures.

In order to ensure full payment the Plan must delineate procedural mechanisms for protecting the United States's claims. The full payment requirement of the "unusual circumstances" test and the Code's "cram down" provision would be met if the revised Plan (1) provides an adequate mechanism by which the United States can prevent the claims administrator from paying contested claims, such as providing the United States with the same kind of automatic suspension of payment to government beneficiaries that is afforded to the Canadian governmental payers under the British Columbia Class Action Settlement Agreement, and (2) specifies the amount and form of notice that must be given to the United

incorporates the British Columbia Class Action Settlement Agreement, which requires that there be some joint resolution of both the beneficiary's claim and the related Canadian governmental claim before an individual beneficiary of a governmental health care program is paid. *Plan* §§ 1.15, 1.16, 1.131, 5.7.1. Under the Settlement Agreement, the British Columbia claims administrator must determine whether a Canadian governmental payer has a claim with respect to an impending beneficiary's payment and notify the Canadian payer promptly of its potential claim. The claims administrator must then hold the beneficiary's payment in trust until he receives instructions from both the individual beneficiary and the government party that they have reached an agreement as to the appropriate allocation of a settlement payment. *British Columbia Class Action Settlement Agreement* § 6.3. If no agreement is reached, the dispute is referred to the court for resolution. The court then adjudicates an appropriate allocation of both claims, and issues instructions to the administrator for an appropriate disbursement to both parties. *Id.*

In contrast, no such protections are provided to the United States. The Plan provides no practical mechanism by which the United States can prevent payment to a beneficiary. To the contrary, the Plan expressly states that the United States has no right to stop, delay, or interfere with payment to a beneficiary. *Plan* § 1.131*; Settlement Facility Agreement* § 7.02 (f). Furthermore, once a specific claimant has been paid, the United States's claims against Dow, and all other entities created by the Plan, are cut off for costs related to that claimant. *Litigation Facility Agreement* § 6.07 (a); *Plan* § 6.8. Moreover, the Plan fails to specify the amount of notice that the United States must receive before payment is made to a health care beneficiary.

Despite the Plan's lack of any adequate procedural protections for the United States, the bankruptcy court and

actions, including actions against it shareholders, to the Eastern District of Michigan. Likewise, other breast implant manufacturers also requested that the cases against them be transferred to the Eastern District of Michigan. Because of Dow's bankruptcy, the court granted Dow's request as to the claims against Dow, but denied the transfer of the claims against Dow's shareholders and the other breast implant manufacturers. *See In re Dow Corning Corp.*, 187 B.R. 919, 931-32 (E.D. Mich. 1995). We reversed the district court, holding that the district court had jurisdiction over Dow's shareholders and the other breast implant manufacturers, and remanded the requested transfers for analysis under abstention principles. *See In re Dow Corning*, 86 F.3d 482, 493-94 (6th Cir. 1996). On remand, the district court declined to exercise jurisdiction over Dow's shareholders and the other breast implant manufacturers based on its interpretation of abstention principles. *See In re Dow Corning Corp.*, No. 95-CV- 72397-DT, 1996 WL 511646, at *3 (E.D. Mich. July 30, 1996). On a motion for a Writ of Mandamus, we reversed the district court's ruling with respect to Dow's shareholders. *See In re Dow Corning Corp.*, 113 F.3d 565, 571-572 (6th Cir. 1997). The district court then transferred all breast implant claims against Dow's shareholders to the Eastern District of Michigan.

The trustee in bankruptcy appointed several committees to represent the differing interests of Dow's claimants during the development of Dow's plan of reorganization. The Tort Claimants' Committee vigorously opposed Dow's first two proposed reorganization plans. Dow then entered into mediation with the committees, and on February 4, 1999, Dow and the Tort Claimants' Committee submitted the Amended Joint Plan of Reorganization to the bankruptcy court. On November 30, the bankruptcy court confirmed the Plan. In the following weeks, it issued seven separate

opinions relating to its Confirmation Order.[1]  The district court affirmed the bankruptcy court's Confirmation Order on November 13, 2000.  *In re Dow Corning Corp*, 255 B.R. 445 (E.D. Mich. 2000).  A timely appeal to this Court followed.

Because the bankruptcy court's opinions and the district court's opinion provide a detailed examination of the Plan, we discuss only the portions of the Plan that bear upon our decision.

Under the Plan, a $2.35 billion fund is established for the payment of claims asserted by (1) personal injury claimants, (2) government health care payers, and (3) other creditors asserting claims related to silicone-implant products liability claims.  The $2.35 billion fund is established with funds contributed by Dow's products liability insurers, Dow's shareholders and Dow's operating cash reserves.  As a *quid pro quo* for making proceeds available for the $2.35 billion fund, section 8.3 of the Plan releases Dow's insurers and shareholders from all further liability on claims arising out of settled personal injury claims, and section 8.4 permanently enjoins any party holding a claim released against Dow from

---

[1] *See In re Dow Corning Corp.* (Amended Opinion on the Classification and Treatment of Claims), 244 B.R. 634 (Bankr. E.D. Mich.1999); *In re Dow Corning Corp.* (Amended Opinion on Good Faith), 244 B.R. 673 (Bankr. E.D. Mich.1999); *In re Dow Corning Corp.* (Amended Opinion on Cram Down of Class 4: Is it Fair and Equitable to Cram Down Commercial Claims with Interest Less than Contract Rate?), 244 B.R. 678 (Bankr. E.D. Mich.1999); *In re Dow Corning Corp.* (Amended Opinion Regarding Cram Down on Class 18), 244 B.R. 696 (Bankr. E.D. Mich.1999); *In re Dow Corning Corp.* (Amended Opinion Regarding Cram Down on Class 15), 244 B.R. 705 (Bankr. E.D. Mich.1999); *In re Dow Corning Corp.* (Amended Opinion on 11 U.S.C. §§ 129(a)(9) Objections of the I.R.S. and Texas Comptroller), 244 B.R. 718 (Bankr. E.D. Mich.1999); and *In re Dow Corning Corp.* (Opinion on Best-Interests-of-Creditors Test, Feasibility, and Whether Plan Proponents Comply with the Applicable Provision of Title 11), 244 B.R. 721 (Bankr. E.D. Mich.1999).

---

*In re Dow Corning Corp.*, 244 B.R. at 712.  We find the determination that Class 15 claimants will be paid in full to be clearly erroneous with regards to the United States.

As an independent matter, the bankruptcy court had to determine whether Class 15 claimants were paid in full because the "cram down" provision of the Code required such a finding.  11 U.S.C. § 1129 (b)(2)(B).  The "cram down" provision details special protections to classes of creditors who, like the Class 15 claimants, vote against approval of a reorganization plan.  Under the "cram down" provision, if an objecting, unsecured creditor's claims are not paid in full, junior claimants cannot receive or retain property on account of their prior interest in the debtor.  *Id.*  Dow's shareholders' equity interests are junior to the United States's and the Canadian governmental health care payers' unsecured claims for medical expenses, and, under the Plan, the shareholders maintain their full equity interest in the reorganized debtor.  Thus, to decide whether the Plan complied with the "cram down" provision of the Code, the bankruptcy court had to decide whether the Class 15 claimants would be fully paid.  The bankruptcy court determined that the full payment requirement was met for all Class 15 members.  Because the Plan does not provide the United States adequate protection to meet the full payment requirement, we find this determination clearly erroneous.

In addition, section 1123(a)(4) requires that claims of creditors that are members of the same class be treated equally.  11 U.S.C. § 1123(a)(4).  Under the Plan, the Canadian governmental payers are accorded far more effective recovery rights than the United States.  This disparate treatment of members of the same class violates section 1123(a)(4)'s equal treatment requirement.

The Canadian governmental payers are adequately protected under the Plan.  They are protected because the Plan

First, the bankruptcy court's factual determination that the release and injunction provisions of the Plan are "essential" to the reorganization is ambiguous. In its November 30, 1999 Findings of Fact and Conclusions of Law, the bankruptcy court concluded that the release and injunction provisions were "essential to the reorganization pursuant to the Plan." However, the bankruptcy court subsequently interpreted the release and injunction provisions to apply only to consenting creditors, implying that enjoining non-consenting creditors is not essential to the reorganization. It explained that it found the provisions "essential" in order to "obviate the need for remand in the event [the bankruptcy court is] reversed on appeal with regard to the scope and permissibility of the release and injunction provisions." *In re Dow Corning Corp.,* 244 B.R. at 747. These are inconsistent fact findings that the bankruptcy court must clarify in order for us to endorse enjoining claims against non-debtors.

Second, the bankruptcy court did not make sufficiently particularized factual findings that the Settling Insurers, Corning, Incorporated, the Dow Chemical Company, and Dow's affiliates will make significant contributions to the reorganization pursuant to the Plan. The bankruptcy court declared the contributions important without explaining how or why it reached this conclusion. To satisfy the "unusual circumstances" test, the bankruptcy court must specify facts that support a conclusion that the released parties will make significant contributions to the reorganization pursuant to the Plan.

Third, in order for the Plan to be approved under the "unusual circumstances" test, it must ensure an opportunity for those claimants who choose not to settle to recover in full, and this determination must be supported by particularized factual findings. The bankruptcy court determined that Class 15 claimants, composed of the United States and the Canadian provinces of Alberta and Manitoba, "who obtain judgments against the Litigation Facility will be paid in full."

bringing an action related to that claim against Dow's insurers or shareholders. *Plan* §§ 8.3, 8.4.

Under the Plan, claimants who choose to settle are channeled to the Settlement Facility, a legal entity created by the Plan and authorized to negotiate payments out of funds set aside for that purpose. Claimants who choose to litigate are channeled to the Litigation Facility, a legal entity created by the Plan that is essentially substituted for Dow as a defendant in the claimant's lawsuit.

The Plan divides claims and interests into thirty-three classes and subclasses. Classes 6.1 and 6.2 are composed of foreign breast-implant claimants who are given the opportunity to either settle or litigate their claims. Settlement payments to foreign breast implant claimants are between 35% and 60% of the amounts to be paid to domestic breast-implant claimants.

Class 15 is composed of all "Government Payer Claimants," namely, the United States and the governments of the Canadian provinces of Alberta and Manitoba. Class 15 voted against the Plan. The United States filed claims under the Medicare Secondary Payer Program, 42 U.S.C. § 1395y (b) (2), and the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653, which grant the United States the right to recover from insurers and other third parties, the cost of medical care that, though the legal responsibility of another party, has been paid for or provided through a federal health benefit program.

Class 15 claims not resolved before the Plan's Confirmation Date are liquidated through the Litigation Facility. Canada Claimants recovering through either the Settlement Facility or the Litigation Facility are required to notify the claims administrator of any unresolved subrogation claims or liens held by the Canadian provinces. The claims administrator is under a duty to determine whether one of the

Canadian provinces has a claim with respect to an impending Canada Claimant's payment, and to notify the province of its potential claim. The claims administrator must hold the claimant's payment in a trust until he receives instructions from the claimant and the Canadian province that they have reached an agreement as to the appropriate allocation of a settlement payment. If no agreement is reached, the dispute is referred to a court for resolution.

The United States's claims are not accorded similar protection. The Plan does not specifically permit the United States to interfere with payment to a claimant. Once a specific claimant has been paid, the United States's claims against Dow, and all other entities created by the Plan, are cut off for costs related to that claimant.

The bankruptcy court confirmed the Plan, but construed the non-debtor release and injunction provisions to apply only to consenting creditors. *In re Dow Corning Corp.,* 244 B.R at 745. Although the bankruptcy court determined that it has authority under the Bankruptcy Code to enjoin a non-consenting creditor's claims against non-debtors, it decided, based on non-bankruptcy law, that such injunctions are inappropriate as applied to non-consenting creditors, and construed the Plan accordingly. *Id.* The district court affirmed the bankruptcy court's Confirmation Order but reversed the bankruptcy court's interpretation of the release and injunction provisions of the Plan. The district court interpreted the non-debtor release and injunction provisions of the Plan to apply to all creditors, consenting and non-consenting.

## II.

In a bankruptcy proceeding, the bankruptcy court is the finder of fact. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir. 1988). When a district court acts as an appellate court as it does in a bankruptcy proceeding, it reviews the bankruptcy

(2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions. *See In re A.H. Robins*, 880 F.2d at 701-702; *Johns-Manville*, 837 F.2d at 92-94; *In re Continental Airlines*, 203 F.3d at 214.

For several reasons, the record produced by the bankruptcy court in this case does not support a finding of "unusual circumstances" such that we can endorse enjoining non-consenting creditors' claims against a non-debtor. The bankruptcy court's findings of fact with regards to the "unusual circumstances" test were no more than conclusory statements that restated elements of the test in the form of factual conclusions. The bankruptcy court provided no explanation or discussion of the evidence underlying these findings. Moreover, the findings did not discuss the facts as they related specifically to the various released parties, but merely made sweeping statements as to all released parties collectively. Such factual determinations are not sufficiently specific and explained to support a finding of "unusual circumstances." And, when "the bankruptcy court's factual findings are silent or ambiguous as to. . . outcome determinative factual question[s],. . . [we] must remand the case to the bankruptcy court for the necessary factual determination[s]." *In re Caldwell,* 851 F.2d at 857.

the statute authorizing tax injunctions." *Grupo Mexicano*, 527 U.S. at 326. Thus, because the district court had a statutory basis for issuing such an injunction, it was not confined to traditional equity jurisprudence available at the enactment of the Judiciary Act of 1789. The statute in *First National* gave courts the power to grant injunctions "necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C.§ 7402(a) (1964). Similarly, the Bankruptcy Code gives bankruptcy courts the power to grant injunctions "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). We conclude that due to this statutory grant of power, the bankruptcy court is not confined to traditional equity jurisprudence and therefore, the bankruptcy court's *Grupo Mexicano* analysis was misplaced.

Because we determine that enjoining a non-consenting creditor's claim against a non-debtor is "not inconsistent" with the Code and that *Grupo Mexicano* does not preclude such an injunction, we turn to when such an injunction is an "appropriate provision" of a reorganization plan pursuant to section 1123(b)(6). Because such an injunction is a dramatic measure to be used cautiously, we follow those circuits that have held that enjoining a non-consenting creditor's claim is only appropriate in "unusual circumstances." *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2nd Cir. 1992); *In Re A.H. Robins Co.*, 880 F.2d at 702; *MacArthur v. Johns-Manville, Corp.*, 837 F.2d 89, 93-94 (2nd Cir. 1988). In determining whether there are "unusual circumstances," our sister circuits have considered a number of factors, which are summarized in our holding below. We hold that when the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor: (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

court's factual findings under the clearly erroneous standard, and its conclusions of law *de novo. Id*. "In appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law." *In re Madaj,* 149 F.3d 467, 468 (6th Cir. 1998) (quoting *In re Century Boat Co.,* 986 F.2d 154, 156 (6th Cir. 1993)). We review the district court's legal conclusions *de novo. In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996).

The first issue we are asked to decide is whether a bankruptcy court has the authority to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan under Chapter 11 of the Bankruptcy Code. This is a question of first impression in this Circuit.

The Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan. *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000). However, bankruptcy courts, "as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.,* 495 U.S. 545, 549 (1990). For example, section 105 (a) of the Bankruptcy Code grants a bankruptcy court the broad authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This section grants the bankruptcy court the power to take appropriate equitable measures needed to implement other sections of the Code. *See In re Granger Garage, Inc.,* 921 F.2d 74, 77 (6th Cir. 1990).

Consistent with section 105(a)'s broad grant of authority, the Code allows bankruptcy courts considerable discretion to approve plans of reorganization. *Energy Resources Co.,* 495 U.S. at 549. Section 1123(b)(6) permits a reorganization plan to "include any. . . appropriate provision not inconsistent

with the applicable provisions of this title."  11 U.S.C. § 1123(b)(6).  Thus, the bankruptcy court, as a forum for resolving large and complex mass litigations, has substantial power to reorder creditor-debtor relations needed to achieve a successful reorganization.  For example, under the doctrine of marshaling of assets, "[t]he bankruptcy court has the power to order a creditor who has two funds to satisfy his debt to resort to the fund that will not defeat other creditors."  *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir. 1989).  Moreover, it is an "ancient but very much alive doctrine . . . [that]. . . a creditor has no right to choose which of two funds will pay his claim."  *Id.*  Likewise, when a plan provides for the full payment of all claims, enjoining claims against a non-debtor so as not to defeat reorganization is consistent with the bankruptcy court's primary function.  *See id.*  For the foregoing reasons, such an injunction is "not inconsistent" with the Code, and is authorized by section 1123(b)(6).

Nevertheless, some courts have found that the Bankruptcy Code does not permit enjoining a non-consenting creditor's claims against a non-debtor.  *See In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995); *In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 600 (10th Cir. 1990).  These courts primarily rely on section 524(e) of the Code, which provides that "the discharge of the debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).  However, this language explains the effect of a debtor's discharge.  It does not prohibit the release of a non-debtor.  *See In re Specialty Equip. Co.*, 3 F.3d 1043, 1047 (7th Cir. 1993) ("This language does not purport to limit or restrict the power of the bankruptcy court to otherwise grant a release to a third party."); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987); *In re A.H. Robins Co.*, 880 F.2d at 702.

The bankruptcy court concluded that non-debtor releases were authorized by section 1123(b)(6), but were precluded by

a non-bankruptcy law limitation on the bankruptcy court's equity power. *In re Dow Corning Corp.*, 244 B.R at 744. We disagree.  The bankruptcy court cited *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999), for the proposition that a court's use of its general equity powers "is confined within the broad boundaries of traditional equitable relief."  The *Grupo Mexicano* Court explained that, "the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789."  *Id.* at 318 (quoting A. Dobie, Handbook of Federal Jurisdiction and Procedure 660 (1928)).  Based upon this principle, the *Grupo Mexicano* Court vacated an injunction preventing a toll road operator from dissipating, transferring, or encumbering its only assets to the prejudice of an unsecured note holder because traditional equity jurisprudence did not allow such remedies until a debt had been established.  *Id.* at 319.  The bankruptcy court, applying the *Grupo Mexicano* analysis, concluded that non-debtor releases were also unprecedented in traditional equity jurisprudence, and therefore exceeded the bankruptcy court's equitable powers. *In re Dow Corning Corp.*, 244 B.R. at 744.

The district court rejected this argument on the grounds that the releases were authorized by "sufficient statutory authority under the Bankruptcy Code." *In re Dow Corning Corp.*, 255 B.R. at 480.  For the following reasons, we agree with the district court.  In *Grupo Mexicano,* the Supreme Court distinguished its own holding from that in *United States v. First National City Bank*, 379 U.S. 378 (1965).  527 U.S. at 326.  *First National* approved an injunction preventing a third-party bank from transferring any of a taxpayer's assets. 379 U.S at 379-380.  The *Grupo Mexicano* Court distinguished that holding on the grounds that the *First National* case "involved not the Court's general equitable powers under the Judiciary Act of 1789, but its powers under