**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1608**

NATIONAL HERITAGE FOUNDATION, INCORPORATED,

Plaintiff – Appellant,

v.

HIGHBOURNE FOUNDATION; JOHN R. BEHRMANN; NANCY BEHRMANN,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony J. Trenga, District Judge.  (1:12-cv-01329-AJT-JFA; 09-10525-BFK; 09-01342-SSM)

Argued: May 14, 2014                    Decided: June 27, 2014

Before WILKINSON, AGEE, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

**ARGUED**: David B. Goroff, FOLEY & LARDNER LLP, Chicago, Illinois, for Appellant.  Glenn W. Merrick, G.W. MERRICK & ASSOCIATES, LLC, Centennial, Colorado, for Appellees.  **ON BRIEF**: Erika L. Morabito, Rory E. Adams, FOLEY & LARDNER LLP, Washington, D.C., for Appellant.  Daniel J. Schendzielos, COLORADO TRIAL LAWYERS & LEGAL SERVICES, LLC, Greenwood Village, Colorado, for Appellees.

DIAZ, Circuit Judge:

On remand following an earlier appeal in this case, a bankruptcy court ruled that the non-debtor release provision in National Heritage Foundation's Chapter 11 reorganization plan was unenforceable. The district court affirmed. On appeal to this court, NHF argues that the courts below erred, claiming that the facts and circumstances surrounding its bankruptcy are sufficiently unique to justify the release. Finding insufficient evidence to support NHF's contentions, we affirm.

I.

A detailed recitation of the facts underlying this case is contained in our previous opinion, Behrmann v. National Heritage Foundation, Inc., 663 F.3d 704 (4th Cir. 2011) (NHF I). We recite only those facts relevant to this appeal.

NHF is a non-profit public charity[1] that administers and maintains Donor-Advised Funds. These are funds in which donors relinquish all right and interest in the assets they donate. The sponsoring charitable organization--in this case, NHF--owns and controls all of the donated assets, although donors retain

---

[1] In November 2011, the IRS revoked NHF's status as a section 501(c) public charity.

the right to make non-binding recommendations regarding the use of the assets.

In 2009, NHF filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code after a state court entered a multimillion dollar judgment against it. After multiple revisions, the bankruptcy court approved NHF's Fourth Amended and Restated Plan of Reorganization (the "Plan"). The Plan contained a Non-Debtor Release Provision covering NHF; the Official Committee of Unsecured Creditors (the "Committee") and its members; any designated representatives of the Committee; and any officers, directors, or employees of NHF, the Committee, or their successors and assigns (collectively, the "Released Parties"). The Release Provision provided that the Released Parties

> shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to any party in interest who has filed a claim or who was given notice of the Debtor's Bankruptcy Case (the "Releasing Parties") for any act or omission before or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the operation of the Debtor's business, except to the extent relating to the Debtor's failure to comply with its obligations under the Plan.

J.A. 1059.[2]

---

[2] The Plan also contained an Exculpation Provision, barring suits against the Released Parties for any acts or omissions in connection with the bankruptcy, and an Injunction Provision, enjoining suits in violation of either the Release or
(Continued)

Certain NHF donors--the appellees in this case--challenged the Plan's confirmation on the ground that the Release Provision was invalid. The district court affirmed the bankruptcy court's confirmation of the Plan.

On the first appeal, we vacated that portion of the district court's judgment affirming the Release Provision, holding that the bankruptcy court failed to make sufficient factual findings to support its conclusion that the Release Provision was essential. See NHF I, 663 F.3d at 712-13. Although we reiterated this circuit's longstanding rule that non-debtor releases may be enforced in appropriate circumstances, we cautioned that they should only be approved "cautiously and infrequently." Id. at 712. To determine whether such circumstances exist, we directed the bankruptcy court to consider the six substantive factors enumerated in Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648 (6th Cir. 2002). These include whether:

---

Exculpation Provision. The bankruptcy court upheld the Exculpation Provision, see In re Nat'l Heritage Found., Inc., 478 B.R. 216, 234 (Bankr. E.D. Va. 2012), a decision that neither party challenged. It also approved the Injunction Provision, but only to the extent that it enforced the Exculpation Provision and not the Release Provision. See id. Based on our holding that the Release Provision is unenforceable, we find no error in that judgment.

4

(1) There is an identity of interests between the debtor and the third party . . . ; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization . . . ; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; [and] (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full.

Id. at 658. On remand, we instructed the bankruptcy court--"if the record permits it--to set forth specific factual findings supporting its conclusions" that the Release Provision in NHF's Plan was valid. NHF I, 663 F.3d at 713.

A different bankruptcy court judge considered the case on remand. That court gave the parties the option of reopening the record to present more evidence, but they declined to do so. Reviewing the then-existing record, the bankruptcy court made factual findings with respect to each of the Dow Corning factors. It concluded that only one factor--an identity of interests between NHF and the Released Parties--clearly weighed in favor of NHF, and it declared the Release Provision unenforceable. See In re Nat'l Heritage Found., Inc., 478 B.R. 216, 232 (Bankr. E.D. Va. 2012). The district court affirmed the bankruptcy court's ruling. See Nat'l Heritage Found., Inc. v. Behrmann, No. 1:12-cv-1329, 2013 WL 1390822, at *9 (E.D. Va. Apr. 3, 2013). NHF timely appealed.

5

II.

We review the legal conclusions of the bankruptcy court and district court de novo.  Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja), 743 F.3d 423, 429 (4th Cir. 2014).  Like the district court below, we review the bankruptcy court's factual findings for clear error.  Id.[3]

A.

Based on the record before us, we conclude that NHF has failed to carry its burden of proving that the facts and circumstances of this case justify the Release Provision.  Like the courts below, we consider the evidence with respect to each Dow Corning factor in turn.

---

[3] Relying on Henry A. Knott, Co. v. Chesapeake & Potomac Telephone Co. of West Virginia, 772 F.2d 78 (4th Cir. 1985), NHF argues that the district court should have reviewed the bankruptcy court's factual findings on remand de novo.  In Henry A. Knott, we held that a de novo hearing may be required before a successor judge "if the case requires the trier of fact to make credibility determinations concerning the testimony of witnesses."  Id. at 85.  Here, however, there was only one witness, Janet Ridgely, and her credibility was not in dispute.  Rather, both courts simply found her testimony insufficient to support the Release Provision even if fully credited.  Given this, we see no reason why the district court was required to depart from the general rule that the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013.

## 1.

Under the first Dow Corning factor, a court must consider whether there is an identity of interests--usually an indemnity obligation--between the debtor and the released parties. A non-debtor release may be appropriate in such circumstances because a suit against the non-debtor may, "in essence, [be] a suit against the debtor" that risks "deplet[ing] the assets of the estate." NHF I, 663 F.3d at 711 (quoting In re Dow Corning, 280 F.3d at 658).

We conclude that NHF has demonstrated an identity of interests between itself and the Released Parties. Under the terms of its bylaws, NHF must advance legal expenses and indemnify its officers and directors for "any action . . . in which such person may be involved by reason of his being or having been a director or officer of" NHF. J.A. 868. No security is required to ensure the covered parties repay NHF for any advanced expenses. See also In re Nat'l Heritage Found., 478 B.R. at 227-28 (describing the scope of NHF's indemnification provisions). Such an expansive indemnity obligation is sufficient to satisfy the first Dow Corning factor.

## 2.

The second Dow Corning factor required NHF to demonstrate that the Released Parties made a substantial contribution of

7

assets to its reorganization.  NHF I, 663 F.3d at 711.  In effect, this factor ensures that in order for a Released Party to achieve that status, it must have provided a cognizable and valid contribution to the debtor as part of the debtor's reorganization.

None of the Released Parties in this case made any financial contribution to the reorganization.  NHF nonetheless argues that its officers and directors satisfied this requirement by promising to continue serving NHF.

As an initial matter, there is no evidence in the record to support NHF's assertion that its officers and directors actually promised to continue serving NHF.[4]  Even if such a promise had been made, we find no error in the district court's conclusion that it would not constitute a substantial contribution of assets in this case.  As the bankruptcy court found, NHF's "officers and directors, all of whom are insiders, performed their duties either because they were paid to do so (in the case of the officers), or because they had a fiduciary obligation to do so (in the case of the directors)."  In re Nat'l Heritage Found., 478 B.R. at 229.  Under these circumstances, the Released Parties did not provide meaningful consideration for

---

[4] The departure of Dr. John T. Houk, NHF's former CEO, seems to belie such a claim.

their release from liability.  Cf. In re SL Liquidating, Inc., 428 B.R. 799, 804 (Bankr. S.D. Ohio 2010) (concluding that directors and officers did not make a substantial contribution when their "described efforts . . . [were] consistent with their preexisting fiduciary duties and job responsibilities").  The absence of such consideration weighs against NHF's Release Provision.

3.

The third Dow Corning factor also counsels against the Release Provision.  To satisfy this factor, a debtor must demonstrate that the non-debtor release is "essential" to its reorganization, such that "the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor."  NHF I, 663 F.3d at 711-12 (quoting In re Dow Corning, 280 F.3d at 658).

NHF primarily contends that the risk of litigation from its donors, whose numbers run in the thousands, renders the Release Provision essential, as NHF would likely have to indemnify its officers and directors for their legal expenses should such suits arise.

Although we are sympathetic to NHF's concern about the possibility of donor suits, the evidence does not suggest that its reorganization is doomed without the Release Provision.  NHF

9

has provided little to no evidence regarding the number of likely donor claims, the nature of such claims, or their potential merit. NHF's vice president, Janet Ridgely, stated that NHF insiders are concerned about donors bringing suit, but that is simply too vague to substantiate the risk of litigation. Cf. In re Dow Corning Corp., 287 B.R. 396, 411 (E.D. Mich. 2002) (finding a release provision essential when more than 14,000 lawsuits had already been filed against a non-debtor).[5]

Nor does the fact that a prior judgment against NHF was, by itself, sufficient to trigger bankruptcy establish that donor litigation, should it materialize, would imperil NHF's reorganization. Based on the dearth of evidence in the record, we can only speculate as to the potential impact of any donor suits on NHF's financial bottom line.

NHF also argues that the Release Provision is essential because its current officers and directors may refuse to serve without such a release. In support, it points to Ridgely's

---

[5] We recognize that the Behrmanns, the appellees in this case, filed a fraud action against NHF and its officers and directors, notwithstanding a stay leaving the Release Provision in effect. But the mere fact that a single donor suit has been filed does not establish that NHF will face a flood of litigation without the Release Provision. We also note that the district court ordered the dismissal of the Behrmanns' action and required them to pay attorney's fees to NHF. See In re Nat'l Heritage Found., Inc., ___ B.R. __, 2014 WL 1783943, at *9-*10, *18-*19 (E.D. Va. May 5, 2014).

10

testimony that the continued service of NHF's officers and directors is critical to the reorganization, and that a fear of third-party suits "might render [them] unwilling to serve." J.A. 949.

We find no error in the bankruptcy court's finding that the risk of officer-and-director flight in this case is minimal. Although not irrelevant, Ridgely's statement is hardly conclusive evidence that NHF's officers and directors would leave without the Release Provision. And as the bankruptcy court noted, the risk of NHF's insiders "abandon[ing] ship" is particularly low, given that most of them are members of a single family. In re Nat'l Heritage Found., 478 B.R. at 229.

The bankruptcy court also correctly found that the Release Provision itself provides little inducement for these individuals to stay. NHF's insiders have already been exposed to whatever liability they may have for their pre-petition conduct, and the release does not shield them from liability going forward. And even if NHF's officers and directors do leave, NHF has not suggested that it would face difficulty recruiting new personnel. See id. at 230-31.

If this failure of proof were not enough, the severability clause contained in NHF's Reorganization Plan cements our view that the Release Provision is not essential. That clause provides that the Plan would remain in effect "[s]hould any

11

provision in this Plan be determined to be unenforceable." J.A. 643 (emphasis added). As we have already concluded, such language "suggests that the plan would remain viable absent the Release Provision[]." NHF I, 663 F.3d at 714.

Under these circumstances, we do not believe NHF has carried its burden of demonstrating that the Release Provision is essential to its reorganization. This failure weighs strongly against the validity of the Release Provision.

4.

To satisfy the fourth Dow Corning factor, NHF was required to prove that the class or classes affected by the Release Provision overwhelmingly voted in favor of the Plan.[6] Id. at 712.

In this case, the Release Provision most directly impacted the class of individuals who made donations to NHF's Donor-Advised Funds (the "donor class"). Under applicable bankruptcy rules, the donor class's support for the Plan was presumed without a formal vote because, under its terms, donor claims were eligible for full payment with interest. NHF maintains that the donor class's presumed support for the plan weighs in

---

[6] Appellees argue that NHF has waived argument with respect to the last three Dow Corning factors because it did not address them below. As NHF would not prevail on the merits anyway, we need not resolve this question.

12

favor of the Release Provision, and that, regardless, the class's support for the Plan is irrelevant because its donors are not actually creditors.

We recognize that there is some uncertainty regarding whether an unimpaired class's presumed support for a reorganization plan is sufficient to satisfy this Dow Corning factor. As a legal matter, the bankruptcy court was entitled to presume the donor class's support because their claims were unimpaired. See 11 U.S.C. § 1126(f) ("[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."). But the power to authorize non-debtor releases is rooted in a bankruptcy court's equitable authority. See Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989). Here, the equities weigh against NHF, as the class most affected by the Release Provision was not given the opportunity to accept or reject the plan. Cf. In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993) (finding releases consensual and valid when "each creditor could choose to grant, or not to grant, the release irrespective of the vote of the class of creditors or interest holders of which he or she is a member," meaning that "a creditor who . . .

13

abstains from voting may still pursue any claims against third-party nondebtors").

In any event, we need not resolve this question today. Even if NHF is correct, this factor only marginally weighs in its favor, and it would not alter our ultimate conclusion that NHF has failed to demonstrate that the circumstances warrant the Release Provision. Creditor support does not make up for the fact that most of the other Dow Corning factors weigh against enforcing the Release Provision.

5.

Under the fifth Dow Corning factor, we consider whether the debtor's reorganization plan provides a mechanism to consider and pay all or substantially all of the class or classes affected by the non-debtor release. See NHF I, 663 F.3d at 712. As the district court noted, "[t]his consideration has typically been used to justify release provisions where the reorganization plan includes a mechanism such as a dedicated settlement fund to pay the claims . . . of those affected by an injunction." Behrmann, 2013 WL 1390822, at *8; see also In re Metromedia Fiber Network, Inc., 416 F.3d 136, 142 (2d Cir. 2005) ("Courts have approved nondebtor releases when . . . the enjoined claims were 'channeled' to a settlement fund rather than extinguished . . . .").

14

For example, we have upheld a release provision in a reorganization plan when the debtor created a separate fund to settle, among other things, untimely claims or those that otherwise failed to comply with applicable procedures. See A.H. Robins Co., 880 F.2d at 700-02. Although there is no per se requirement that a debtor "channel" claims, the absence of such a mechanism can weigh against the validity of a non-debtor release, especially when the result is that the impacted class's claims are extinguished entirely.

The absence of such a mechanism here weighs against the Release Provision. Any donor claims not filed or allowed during the bankruptcy proceedings have simply been extinguished. Thus, NHF's plan lacks an important element of the plan endorsed in A.H. Robins--"a second chance for even late claimants to recover." Id. at 702.

To be sure, NHF provided notice and opportunity for donors to file claims against it during the bankruptcy proceedings. But NHF has provided no evidence--in the form of expert testimony or otherwise--that this process adequately protected the donors' interests. NHF certainly did not encourage donors to participate in the bankruptcy process. See, e.g., J.A. 503 (informing donors in the disclosure statement that NHF would object to any donor-filed claims and that "Donors are not creditors of the Debtor and will have no rights to vote or

15

reject the Debtor's Plan or receive Distributions under the Plan"). This hardly strikes us as a bona fide effort to ensure the consideration of nearly all of the donor class's claims, and we agree with the district court's conclusion that this factor weighs against the Release Provision.

6.

The final substantive Dow Corning factor is whether the plan provides an opportunity for those who chose not to settle to recover in full. NHF I, 663 F.3d at 712.

Our analysis of this factor largely overlaps with the preceding factor. To that effect, we reiterate the import of NHF's failure to provide any mechanism to pay donor claims outside of the bankruptcy proceedings. As the bankruptcy court found, "the very purpose of the Release Provision[] is to . . . preclud[e] any recovery from third party sources outside of the Plan." In re Nat'l Heritage Found., 478 B.R. at 232.

B.

Our review of the record shows that one factor--the possibility that NHF will have to indemnify its officers and directors for litigation expenses--weighs clearly in favor of the Release Provision. But NHF has failed to provide sufficient evidence that it faces a strong possibility of suits that would trigger its indemnity obligation, much less that such suits would threaten its reorganization. And an indemnity obligation

16

is not, by itself, sufficient to justify a non-debtor release. If it were, "third party releases would be the norm, not the exception, in Chapter 11 cases." Id. at 232. Given the extraordinary breadth of this particular release, we are also troubled by NHF's failure to provide a mechanism outside of the bankruptcy process to satisfy donor claims.

In sum, we agree with the district court that NHF has failed to demonstrate that it faces exceptional circumstances justifying the enforcement of the Release Provision in its Reorganization Plan.

We emphasize that our decision is ultimately rooted in NHF's failure of proof rather than circumstance alone. A debtor need not demonstrate that every Dow Corning factor weighs in its favor to obtain approval of a non-debtor release. But, as we noted in NHF I, a debtor must provide adequate factual support to show that the circumstances warrant such exceptional relief, and NHF has failed to do so here.

We also note that NHF is not without options should circumstances change--in particular, if damaging donor suits do materialize. For example, NHF can petition the bankruptcy court to reopen the case. See 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010; see also Goodman v. Phillip R. Curtis Enters., Inc., 809 F.2d 228, 232 (4th Cir. 1987) (noting that bankruptcy court jurisdiction "is specifically retained to modify a previously

17

confirmed plan").  It can also file another petition for reorganization under Chapter 11.

At this point, however, NHF has not made the necessary showing to support the risk of donor litigation, nor has it carried its broader burden of justifying the non-debtor release in its Reorganization Plan.


                                III.

For these reasons, we affirm the district court's judgment.


                                            <u>AFFIRMED</u>