KETHLEDGE, J., delivered the opinion of the court, in which SUTTON, J., joined. BATCHELDER, C.J. (pp. 774-79), delivered a separate opinion concurring in part and dissenting in part.
OPINION
KETHLEDGE, Circuit Judge.
Normally our task in construing a contract or similar document is to identify not merely a reasonable interpretation, but the best one. In some cases, however, some other court or entity is better-positioned to determine what interpretation is best. In those cases, we might ask whether that court’s interpretation is reasonable, and if so leave matters there.
This is such a case. At issue in these now-consolidated appeals are two orders *771 interpreting different provisions of a single bankruptcy plan. The court that entered those orders is more familiar with the plan and the circumstances surrounding it than we are, so we ask primarily whether its interpretations of the two provisions are reasonable. We conclude that its interpretation of one provision is reasonable, but that, for technical grammatical reasons, its interpretation of the other provision is not.
I.
In 1995, Dow Corning had pending against it thousands of lawsuits relating to breast implants it had manufactured. Dow Corning filed bankruptcy under Chapter 11 that year to facilitate settlement of those claims. We have already described those bankruptcy proceedings in prior opinions. See, e.g., In re Dow Coming Corp., 456 F.3d 668 (6th Cir.2006). Here, we describe only the facts relevant to these consolidated appeals.
Dow Coming’s Amended Joint Plan of Reorganization (the Plan) took effect in June 2004. The Plan establishes a $1.95 billion fund — administered by the Settlement Facility-Dow Corning Trust — for claimants who choose to settle rather than litigate their claims. Each of the orders before us today involves a Plan definition that affects payments made pursuant to the Plan.
The first order concerns tissue expanders, which are devices implanted in the body and then gradually filled with saline solution in the weeks that follow. Then-purpose is to expand the patient’s skin around the device; and upon accomplishing that purpose, they are typically (if not always) removed. Dow Corning has manufactured more than 250 kinds of tissue expanders, three of which are specifically designed to be implanted in the breast. The question presented in the first appeal is whether those three types of tissue ex-panders are “Breast Implants” as defined by the Plan. The district court held they were, thereby opening the door to settlement payments based on a claimant’s use of them.
The second order concerns the Plan’s definition of total disability, which is set forth in a Plan document that the parties call Annex A. Claimants who meet the Plan’s definition of total disability receive larger settlement payments than they otherwise would under the Plan. Dow Corning and the Claimants’ Advisory Committee (the Committee) disagree as to what this definition means: Dow Corning takes a narrower view of the definition, the Committee a broader one. The district court held that the broader view is the correct one.
Dow Corning appealed both orders.
II.
A.
The parties dispute the standard of review. At issue in each appeal is the district court’s interpretation of a definition set forth in the Plan. We review for abuse of discretion a bankruptcy court’s interpretation of a plan that the court had confirmed. See Dow Coming, 456 F.3d at 676. But these appeals involve a decision by a district court, not a bankruptcy one, so the Dow Coming standard does not apply by its terms here. Dow Coming would take us to the other extreme: It argues that our review should be de novo, citing our rule that, “[i]n a bankruptcy case on appeal from a district court, we owe no special deference to the district court’s decision[.]” In re Eagle-Picher Indus., Inc., 447 F.3d 461, 463 (6th Cir.2006). But that rule does not apply by its terms either, because the district court here did not sit merely as an appellate court. It *772 decided the issues before us in the first instance.
So we look to the underpinnings for each standard. On the one hand, the district court was not “interpreting] its own prior language or intent” when it interpreted the Plan, Dow Coming, 456 F.3d at 677, so that particular rationale for deference is not present here. But other rationales are. The district court judge who entered the orders at issue — Judge Denise Page Hood — has presided over this bankruptcy case continuously since 1995. She was present on the bench for two days of the Plan’s confirmation hearings. And she has adjudicated the case directly since 2001, which is when she withdrew the reference to the bankruptcy court. (The bankruptcy judge who had entered the confirmation order departed the bench that year.) Thus, Judge Hood has presided over this case for fifteen years, and acted as the court of fust resort for nine. There is simply no denying that she is much more familiar with this Plan — and with the parties’ expectations regarding it — than we are.
So a measure of deference is in order. The question is how to characterize it. The district court’s orders involve interpretation of the Plan; and “[i]n interpreting a confirmed plan, courts use contract principles[.]” Id. at 676. Contractual interpretation is not discretionary, so it is awkward to say that we review the court’s interpretation for abuse of discretion. We need to convert the language of discretion to fit the task at hand.
A basic principle of contractual interpretation is that “[a] term is deemed ambiguous when it is capable of more than one reasonable interpretation.” Id. (internal quotation marks omitted). Our court is reasonably well-equipped to determine whether a plan provision is ambiguous— we construe contracts all the time — though in this case we should be mindful that our blind spots with respect to how one provision might interrelate with others are likely much larger than are the district court’s. On the whole, however, the determination whether a plan provision is ambiguous is not a point on which we substantially defer.
That point arrives, instead, when we determine that a provision is ambiguous. Then, under the law of virtually any jurisdiction, we open the eleanroom of textual interpretation to whatever extrinsic evidence awaits outside. Here, each party has amassed a formidable dump of such evidence; and each side argues, in great detail, that its evidence shows that the other’s interpretation would confound everyone’s expectations as to what the Plan was supposed to mean. This is where we start to defer in earnest. The district court in this case, like the bankruptcy courts in others, is far-better equipped, not least in terms of background knowledge, to sort through that evidence and determine what is important.
Thus, to summarize: For purposes of plan interpretation, an ambiguous provision can reasonably be read more than one way. To determine which of the reasonable readings is best, the court normally may assess extrinsic evidence. That assessment is best left to the district court here. Thus, if the court assessed extrinsic evidence in choosing among reasonable interpretations of the Plan, we will not disturb its choice. That is the deference we afford the district court in these consolidated appeals.
B.
The first order concerns the Plan’s definition of “Breast Implant.” Section 1.17 of the Plan provides:
*773 Breast Implant means all silicone gel and saline-filled breast implants with silicone elastomer envelopes manufactured and either sold or otherwise distributed by the Debtor.
The issue before us is whether this definition encompasses tissue expanders that Dow Corning designed and manufactured specifically for implantation in the breast. The district court held, and Dow Corning does not dispute, that the three types of tissue expanders at issue here had silicone elastomer envelopes and were saline-filled. The only element of the definition that is disputed, therefore, is whether the subject expanders were “breast implants” as that term is used in the definition.
A definition that contains the defined term within it is very likely to be ambiguous. So it is here. The term “breast implant,” as used in the definition (of “Breast Implant,” amazingly), can reasonably be read to refer to any device specifically designed for implantation in the breast. That is how the district court read the term; and that reading draws additional support from the definition’s use of the word “all[.]”
But there is another reading of the provision. Dow Corning essentially contends that “breast implant” is a term of art, whose meaning was generally understood in the medical community to include only devices designed for long-term implantation — which, of course, tissue expanders are not. And Dow Corning argues that “breast implant” should be given that technical meaning in § 1.17. But that argument begs the question whether the words “breast implant” were used in a technical or more ordinary sense in this provision. We see nothing in the definition’s text that answers that question as a matter of logical necessity. And we are not at all convinced by Dow Coming’s “structural” arguments concerning the “qualifying product identifiers” in Annex A and the definition of “Other Products” in § 1.117 of the Plan. Each of those arguments assumes that tissue expanders are not “Breast Implants” — which is to say the arguments are entirely circular.
The choice between these different readings of § 1.17, therefore, lies with the district court. Even so, we cannot now affirm the order before us in case 09-1827. Although we hold that § 1.17 is ambiguous, the district court apparently thought it was not. As a result, the court did not assess the parties’ extrinsic evidence with respect to the provision. And thus we have no such assessment to which we can defer.
Had the district court been the court that entered the order confirming the Plan, we would owe the court more deference than we owe it here, and would affirm the court’s decision notwithstanding that omission. See Dow Coming, 456 F.8d at 677 (“disagreeing] with the bankruptcy court’s conclusion that the plan was unambiguous[,]” but holding that the bankruptcy court did not “incorrectly interprete ] its own prior language or intent”). The court that enters an order has less need to consider extrinsic evidence of the order’s meaning than a court that does not. But the district court here did not enter the order confirming the Plan. We therefore vacate the district court’s order with respect to tissue expanders and remand the case to allow it to assess the relevant extrinsic evidence. Once it does so, we expect to defer to its decision.
C.
The second order concerns the Plan’s definition of total disability. The relevant portion of Annex A provides:
Death or total disability resulting from the compensable condition. An individu *774 al will be considered totally disabled if she demonstrates a functional capacity adequate to consistently perform none or only few of the usual duties or activities of vocation or self-care.
The parties dispute the showing necessary to meet this definition. Dow Corning says the claimant must be disabled in both categories — vocation and self-care. The Committee says that a claimant need be disabled in only one. Thus, in the Committee’s view, a claimant’s inability to do more than a few activities in only one of the categories — vocation or self-care — is enough to meet the definition of total disability, even if she can do many activities in the other.
The district court’s reasoning with respect to this provision was straightforward. Simply put, the court held that the word “or,” as used in “vocation or self-care,” was disjunctive, and that a showing of disability in either category was therefore enough to meet the definition. In doing so, the court deemed the provision “unambiguous” and “look[ed] solely to the plain language used by the parties within the four corners of the contract.” Order at 11,10.
With respect, we read the provision differently. The word “or” is normally conjunctive when introduced by “none” or “not.” See, e.g., Huddleston & Pullum, Cambridge Grammar of the English Language 1298 (“When a subclausal or-coordination falls within the scope of a negative, it is equivalent to an cmd-coordination of negative clauses”). To say that “none of the teachers or students will be at the school on July 4,” for example, does not mean that only one of those groups will be absent that day. It means that both groups will be. So it is here: to say that a claimant can perform none (or only a few) of the activities of vocation or self-care, means that she is disabled from performing both types of activities. (In the district court’s defense: to say that this provision is ultimately unambiguous, as we do here, is not to say that it is well-drafted.) Dow Coming’s reading of this provision is correct.
We vacate the order in case 09-1827, reverse the order in case 09-1830, and remand the cases for proceedings consistent with this opinion.