NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0580n.06

Case No. 13-2456

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 31, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| In re SETTLEMENT FACILITY DOW CORNING TRUST. | ) ) ) ) | |
| DOW CORNING CORPORATION, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Interested Party-Appellant, | ) ) | |
| v. | ) ) | |
| CLAIMANTS' ADVISORY COMMITTEE, | ) ) | |
| Interested Party-Appellee. | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

SUTTON, Circuit Judge.  "The issue is, what [are breast implants]?"  *Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117 (S.D.N.Y. 1960) (Friendly, J.). We considered this question once before but could only agree that the words were ambiguous, their meaning tied up in intrinsic and extrinsic evidence surrounding the parties' intent.  The district court on remand weighed this evidence and found that, when the parties said "breast implants," they also meant "tissue expanders."  We affirm.

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

I.

Dow Corning manufactures and distributes various medical devices, including "breast implants" and "tissue expanders." For purposes of this dispute, "[b]reast [i]mplant[s]" are "all silicone gel and saline-filled breast implants with silicone elastomer envelopes manufactured and either sold or otherwise distributed by [Dow Corning]." R. 700-4 at 15. "Tissue expanders" come in hundreds of varieties, but three Dow Corning models are designed for implantation in the breast, where they are filled with saline in order to stretch the patient's skin before (typically) being removed after several weeks.

Not all of these products worked the way they should. By 1995, thousands of breast-implant patients had filed lawsuits against Dow Corning stemming from their use of the company's devices. Dow Corning eventually filed a Chapter 11 bankruptcy petition. The company agreed to a plan of reorganization that establishes a more than $2 billion fund for patients willing to settle their claims. The plan describes what claims are eligible for payment, how claims will be paid, how much money claimants can receive, and so on. The plan empowers the district court "to resolve controversies and disputes regarding interpretation and implementation of th[e] Plan and the Plan Documents." *Id.* at 85.

The parties asked the district court to determine whether the plan's breast-implant coverage extended to tissue expanders. As the trial court initially saw it, Dow Corning's three models of breast-implanted tissue expanders met every element of the reorganization plan's "[b]reast [i]mplant" definition. Each model has a silicone envelope that is implanted in the breast and gradually filled with saline solution. In the court's view, "breast implants" thus unambiguously included "tissue expanders."

2

On appeal, we agreed—in part. After acknowledging that the court's resolution of the "breast implant" question reasonably construed the reorganization plan's words, we identified another, more technical reading of "breast implant" that might exclude "tissue expanders" from its scope. On this basis, we reasoned that the definition was ambiguous, vacated the district court's order, and remanded the case to allow the court to consider other evidence about the meaning of the phrase. *In re Settlement Facility Dow Corning Trust*, 628 F.3d 769, 772–73 (6th Cir. 2010).

On remand, the district court considered the question anew. After accounting for this other possibility, it still concluded that the parties intended "[b]reast [i]mplant" to include "tissue expanders." R. 924 at 9.

II.

Typically, we review "with significant deference" a bankruptcy court's interpretation of a settlement plan that the court itself confirmed. *In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006). In the last go-round, we noted that this characterization of the standard of review does not capture the precise setting of this case. For it was the *bankruptcy* court, not the *district* court, that confirmed this plan, making it inappropriate to give "significant" deference to the district court's reading of the plan. On the other hand, fresh review did not make complete sense either because the district court had presided over the plan and its settlement language for nearly fifteen years. *In re Settlement Facility Dow Corning Trust*, 628 F.3d at 771–72. We therefore adopted something of a middle ground. We decided for ourselves whether the term "breast implant" was ambiguous. But in recognition of the district court's longstanding familiarity with

the case, we noted that, "if the court assessed extrinsic evidence in choosing among reasonable interpretations" of the settlement plan, we would give some deference to that choice. *Id.* at 772.

On remand, the district court invited the parties to submit supplemental briefs describing the extrinsic evidence relevant to the meaning of "breast implant" in the settlement plan. The court then "sort[ed] through [the] evidence," "determine[d] what [was] important," determined what was less important, and on these grounds took the measure of the parties' words. *Id.* When the parties used the phrase "breast implant," the court held, they adopted the broader meaning of it: "Breast [i]mplant[s]" are "*all* silicone gel and saline-filled breast implants with silicone elastomer envelopes," which include "tissue expanders" sharing these qualities. R. 924 at 3, 9 (emphasis added). Based on our review of the record, that is a reasonable assessment of the extrinsic evidence.

Dow Corning's arguments to the contrary fall short. It first claims that the district court did not properly assess the extrinsic evidence because it "refused to consider" expert evidence that breast implants and tissue expanders are distinct. App. Br. at 29. Eugene Jakubczak, a medical device expert, testified that "medical professionals [and regulatory agencies] considered tissue expanders to be a product separate and distinct from a breast implant." R. 51 at 15. But this evidence returns us to the already answered question that prompted the remand: Is there a technical definition of "breast implant" that renders its meaning ambiguous? *See In re Settlement Facility Dow Corning Trust*, 628 F.3d at 773. It does not answer the question posed for remand: Did the parties use "the words 'breast implant' . . . in a *technical* or more *ordinary* sense"? *Id.* (emphasis added).

4

What of Dow Corning's other extrinsic evidence? The company leans heavily on the confirmation-hearing testimony of Frederick Dunbar, an economist who did not mention tissue expanders by name in his estimate of the value of future breast-implant claims. On this basis, Dow Corning argues that the district court "ignor[ed]" evidence that the parties treated breast implants and tissue expanders differently from the start. But the district court did not ignore Dunbar's testimony. It considered the testimony "relevant and credible," R. 924 at 6; it just did not give the testimony the weight Dow Corning ascribes to it. Breast-implanted tissue expanders, it turns out, represent only a small fraction of the possible claims against Dow Corning, which itself might explain the omission. More to the point, Dunbar based his estimate on the experience of manufacturers in other settlement agreements that *did* authorize payments for tissue-expander claims. That is to say, the value of tissue-expander claims was already baked into Dunbar's estimate, making it unnecessary to discuss these products separately during the Dow Corning bankruptcy hearings.

Dow Corning adds that the district court erred when it relied on a *different* settlement plan involving *different* parties to help define the words in *this* plan. The present settlement plan, it turns out, is not the only agreement concerning breast-implant defects in the federal courts. One previous agreement—what the parties call the "Revised Settlement Program"—resolved breast-implant claims against several non-Dow-Corning manufacturers. And that agreement included breast-implanted tissue expanders in the broader "breast implant" settlement category. *See, e.g.*, R. 40 at 12 ("[T]issue expanders were considered breast implants for purposes of . . . the [Revised Settlement Program]."). Does this separate agreement tell us anything about the parties' intent in this case? Dow Corning says no, but the district court said yes for two reasons.

For one, the present settlement agreement refers to the Revised Settlement Program. According to the Dow Corning plan: "The settlement process for Breast Implant Claims is based largely on the criteria and procedures used to resolve breast implant claims in the . . . '*Revised Settlement Program*,'" R. 700-3 at 13 (emphasis added); and "The settlement program is designed to resemble, to the greatest extent possible, the claims process in the *Revised Settlement Program*," *id.* at 92 (emphasis added). The district court could fairly give this separate program a role in its reading of the Dow Corning plan when the parties did the same.

For another, a close look at these passages suggests that the parties intended to import the Revised Settlement Program's substantive provisions into the Dow Corning reorganization plan. The plan assures claimants that Dow Corning will allow settlement "under a procedure, *including Claim payment levels and eligibility criteria*, modeled on the Revised Settlement Program." *Id.* at 12 (emphasis added). Nor did Dow Corning stop there. It also promised claimants that "this Plan offers *increased* compensation and eligibility options as compared to the Revised Settlement Program." *Id.* at 14 (emphasis added). Patients with breast-implanted tissue expanders met the eligibility criteria for breast-implant-claim payment under the Revised Settlement Program, making it reasonable for the district court to read today's settlement plan—offering *better* coverage—the same way.

Dow Corning insists that the district court erred because its second ruling on the "breast implant" issue contradicts its first. In its first opinion on this topic, the court said that "tissue expanders made by Dow Corning did not trigger the 50% reduction in benefits as did breast implants, lending credibility to [Dow Corning's] claim that even under the [Revised Settlement Program] tissue expanders were not considered 'Breast Implants.'" R. 673 at 10. The district court's second opinion, Dow Corning argues, treated this evidence differently. As an initial

matter, this is an odd argument for Dow Corning to make, as it sought a ruling from the district court that was 180 degrees away from its first ruling. That possibility was the whole point of the remand. At any rate, there is less material tension here than Dow Corning suggests. To say that some evidence "lend[s] credibility" to an argument does not establish that the district court found Dow Corning's argument conclusive or even persuasive. The first time around, moreover, the statement was dicta. The district court was careful to explain in its first opinion that it did *not* "consider[] the [extrinsic] evidence involving the [Revised Settlement Program]," because it believed the parties' "[b]reast [i]mplant" definition to be unambiguous. R. 673 at 11. Only in its second opinion did the district court rely on (or make any findings concerning) the Revised Settlement Program. On remand, the district court fairly did what we asked and reasonably construed the operative terms of the settlement agreement in the process.

III.

For these reasons, we affirm.