NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0020n.06

No. 18-1040

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: SETTLEMENT FACILITY DOW CORNING TRUST. | ) | |
| | ) | |
| ——————————————————— | ) | **FILED** |
| | ) | Jan 14, 2019 |
| KOREAN CLAIMANTS, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Interested Parties - Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEBTOR'S REPRESENTATIVES; DOW CORPORATION; CLAIMANTS' ADVISORY COMMITTEE, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: ROGERS, STRANCH, and THAPAR, Circuit Judges.

ROGERS, Circuit Judge. Facing bankruptcy, Dow established a trust to pay out claims arising from injuries and diseases allegedly caused by Dow breast implants.[1] A group of South Korean claimants filed motions regarding their claims: one motion seeking reversal of certain decisions made by the administrators of the claims process, and one asking the claims administrator to re-categorize South Korea as a richer country so that the Korean Claimants would receive higher settlements. The claims administrator reversed the decisions and re-categorized

---

[1] Dow Corning Corporation changed its name to Dow Silicones Corporation effective February 1, 2018, so for convenience, we refer to appellants as Dow throughout.

South Korea, rendering the Korean Claimants' motions largely moot. The district court found that the motions were moot, and to the extent they requested further relief, they failed on the merits. On appeal, the Korean Claimants challenge this decision, arguing that the specific relief they requested has not been granted, but their arguments amount to unfounded or improperly raised requests for additional relief.

**I.**

This appeal concerns Dow breast-implant claims made pursuant to a bankruptcy plan. These types of claims and this plan have been discussed by this court before. *See In re Settlement Facility Dow Corning Tr.*, 628 F.3d 769 (6th Cir. 2010); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002); *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996). Briefly, Dow declared bankruptcy in 1995 in response to "thousands of lawsuits relating to breast implants it had manufactured." *In re Settlement Facility*, 628 F.3d at 771. After much negotiation and legal process, Dow's Amended Joint Plan of Reorganization became effective June 1, 2004. Under the plan, breast-implant claimants who wish to settle their claims can do so with the Settlement Facility-Dow Corning Trust—a $1.95 billion fund established to pay these types of claims. *See id.*

The Korean Claimants are a group of South Koreans who have submitted claims to the Settlement Facility and are represented by Mr. Yeon Ho Kim. Through Mr. Kim, the Korean Claimants submitted hundreds of claims that used the same type of evidence to prove that Dow was the manufacturer of their breast implants: an "affirmative statement" from their physicians that reads as follows:

> The undersigned physician attests that the above patient received breast implant surgery from our hospital and the product used for surgery is a Dow Corning product *Basis: The medical records at that time were destroyed because a ten year period of keeping medical records passed by. However, this hospital only used

Dow Corning products during a period of this operation thus the product used for the above patient can be attested as a Dow Corning product[Date][Signature of implanting physician].

In 2006, the Settlement Facility began having doubts about this proof. According to the Settlement Facility, there were several odd things about the Korean Claimants' claims. Under the plan documents, affirmative statements in general are disfavored, and are only permitted as proof of manufacturer if there are no medical records. But the number of Korean Claimants' claims relying on an affirmative statement was very high: over 94% of Mr. Kim's clients submitted affirmative statements as proof of manufacturer, higher than every other law firm that had submitted more than 100 claims. In other words, almost every Korean Claimant appeared to be unable to locate her medical or hospital records. There were other oddities as well. On some claims the date and facility listed for the procedure would be different on the affirmative statement than the date on registration forms. Correction fluid was used on many forms. Perhaps most troublingly, when questioned regarding these, and similar, documentation problems, Mr. Kim apparently sent the Settlement Facility medical documentation as proof, despite his representation that there were no medical records for these operations. According to Mr. Kim, he used the affirmative statements because the Settlement Facility had agreed that they would be acceptable proof of manufacturer.

After noticing these various problems, the Settlement Facility put the brakes on processing certain claims filed by the Korean Claimants. In August 2011, the Settlement Facility informed Mr. Kim that it was no longer processing claims supported by these affirmative statements. In their briefs before us, all of the parties refer to these actions as an administrative "hold."

In response to the August 2011 letter informing Mr. Kim of the hold, the Korean Claimants filed a "Motion for Reversal of Decision of [the Settlement Facility] Regarding Korean

Claimants." In this motion, the Korean Claimants argued that the Claims Administrator, the person tasked under the plan with administering claims, should not have instituted the hold. The motion was short on law. It did not cite a provision of the plan documents that would have prevented the Claims Administrator from instituting the hold, nor any provision of those documents that entitled the Korean Claimants to federal court review of the Claims Administrator's decision. Dow and the Settlement Facility filed motions to dismiss this Motion for Reversal. They argued that the Claims Administrator's decisions regarding the veracity of a claim or eligibility of a claimant could not be appealed to the district court.

More than two years later, while the Korean Claimants Motion for Reversal was still pending, the Settlement Facility withdrew the hold. The Claims Administrator wrote in a January 2014 email to Mr. Kim that the Settlement Facility "will review and process your claims consistent with the Plan of Reorganization." Mr. Kim replied, "All of the Korean Claimants will appreciate . . . your decision on withdrawal from the exclusion of processing."

Months later, the Korean Claimants, through Mr. Kim, filed a "Motion for Re-Categorization of Korea." Under the plan, countries are categorized differently based on their per-capita Gross Domestic Product (GDP). Broadly speaking, claimants from poorer countries receive smaller settlements. When the Korean Claimants filed their motion, South Korea was a Category 3 country, defined to include countries with between 30 and 60% of the per-capita GDP of the United States. But according to the Korean Claimants in this motion, the then-current edition of the CIA World Factbook (which the plan sets as the definitive source of GDP figures) showed that South Korea's GDP was 64.9% of that of the United States. The Korean Claimants requested that the Settlement Facility re-categorize South Korea as a Category 2 country, defined to include countries with more than 60% of the United States' per-capita GDP. The Korean Claimants also

requested that re-categorization apply retroactively. Specifically, the Korean Claimants requested that "[t]he Court order [the Settlement Facility] to pay the balance of payments . . . to **all** of the Korean Claimants who have already received compensation."

The Claimants' Advisory Committee—a group that represents the interests of claimants— argued that the Korean Claimants had not followed the proper procedure for requesting re-categorization. The Claimants' Advisory Committee relied on language in the plan which set forth the proper procedure: The Korean Claimants were supposed to send a request to the Finance Committee (a group responsible for financial management of the Trust), not the district court. In any event, the Claimants' Advisory Committee argued that re-categorization only applies prospectively under the plan, which states that category adjustments "shall apply to all Claimants residing in such country whose Claims are paid in the year of re-categorization or thereafter." In response, the Korean Claimants sent the request to the Finance Committee and conceded the retroactive-application argument, writing "Yeon Ho Kim realized that the change in compensation level for qualified claimants applies only prospectively. The position by Dow and [the Claimants' Advisory Committee] is right. Therefore the Korean Claimants drop the request in the Motion."

On December 4, 2014, the Claims Administrator notified the Korean Claimants' counsel that the request for re-categorization had been approved, and that "[b]eginning in calendar year January 2015, South Korea[] is re-categorized to Category 2." According to the Korean Claimants, a few weeks later, but before January 1, 2015, the Settlement Facility sent the Korean Claimants hundreds of settlement checks at the Category 3 rate. According to the Korean Claimants, they "lost over a million dollars" because they did not receive checks at the higher, Category 2 rate.

In the spring of 2015 it appeared that both of the Korean Claimants' motions—for reversal of the Claims Administrator's decision to place a hold on certain claims, and for re-categorization

of South Korea—were moot. The Claims Administrator had reversed her decision and South Korea had been re-categorized. So in late April of 2015, Dow Corning, the Debtor's Representatives, and the Claimants' Advisory Committee filed a joint motion titled a "Suggestion of Mootness." Regarding the Motion for Re-Categorization, the movants wrote that the Korean Claimants had requested re-categorization and that it apply retroactively; now, South Korea has been re-categorized and the Korean Claimants conceded that it should apply prospectively. As for the Motion for Reversal, the movants wrote that insofar as the Korean Claimants sought a removal of the administrative hold, their request had been granted, and the motion was moot. Insofar as the Korean Claimants sought additional relief, e.g., a reversal of substantive decisions regarding specific claims, the movants argued that the motion should be dismissed for the reasons already set forth in their earlier oppositions.

Despite Mr. Kim's earlier concession that the Claimants' Advisory Committee was "right" about the prospective application of re-categorization, and that he was "dropping" the request, the Korean Claimants responded in opposition, arguing that "[e]ven if the change of compensation level due to the change of category applies not retroactively but prospectively," a re-categorization effective January 2015 did not grant full relief. The response suggested that the forward-looking request for relief in the original motion should apply "beginning from the year that GDP per capita of Korea exceeds [60%] of that of the United States of America." The Korean Claimants alleged South Korea had passed that benchmark in 2012. The Korean Claimants also pointed out that, if they had been re-categorized as of the date of the original motion, then the checks sent out in late 2014 would have been paid at the higher, Category 2 rate. At oral argument on the mootness motion, Dow responded to this line of argument in part by stating, correctly, "that is not really in his original motion at all." In the Korean Claimants' motion for re-categorization, they had never

requested, or even suggested, anything other than that re-categorization apply to all claims filed by the Korean Claimants, regardless of when they were filed.

In December 2017, the district court entered an order granting the motion suggesting mootness and dismissing the Korean Claimants' motions for re-categorization and reversal. The court held that the Motion for Re-Categorization was moot. The court also dismissed the Korean Claimants' Motion for Reversal. After noting that the hold had been lifted, the court wrote that, insofar as the Korean Claimants were challenging denials of specific claims, the plan did not give the district court the authority to review such challenges. Thus, the court found that "the Motion for Reversal has been rendered moot because the [Settlement Facility] lifted the 'hold' placed on the submitted Korean Claims," and that "any relief sought by the Korean Claimants as to any substantive decision on any Korean Claim made by the Claims Administrator is denied."

Meanwhile, in 2016, the Korean Claimants had filed yet another motion, titled a "Motion for Recognition and Enforcement of Mediation." In it, the Korean Claimants contended that the Claims Administrator and Settlement Facility had engaged in mediation to settle the Korean Claimants' claims and that an agreement was reached, but that the allegedly agreed upon settlement had not been paid.

The Korean Claimants appeal the dismissal of the Motion for Reversal and the Motion for Recategorization. They also ask this court to rule on the merits of their mediation motion, despite the fact that they filed their notice of appeal (which does not mention the mediation motion) almost one year before the district court ruled on it.

## II.

The district court properly dismissed the Korean Claimants' motions for re-categorization and reversal because they were moot. To the extent the Korean Claimants sought additional relief,

they failed to present the arguments properly in favor of such relief, or waived their requests, or sought relief unavailable under the plan, or some combination of all three.

Beginning with the motion for re-categorization, the issue of whether South Korea should be re-categorized is no longer a live issue, because South Korea has been re-categorized. The issue is moot. "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017) (internal quotation marks omitted).

To the extent the Korean Claimants seek relief beyond re-categorization, their requests are futile under the plan, waived, or improperly raised. As the Korean Claimants conceded below and at oral argument, re-categorization does not apply retroactively under the plan, and so any request for retroactive application was properly denied. The Korean Claimants have put forth various dates as contenders for when the re-categorization should have begun to apply: 2012 and, at one point, 2010 were suggested at oral argument below, 2009, 2010, and 2012, as well as April 7, 2014, and December 5, 2014 were suggested in their briefing and at oral argument on appeal. But none of these dates was suggested in the Korean Claimants' original motion. Even if there were some reason to think re-categorization could apply retroactively or to hold that re-categorization must be effective from the date of the re-categorization request—and no clear reason has been presented—we would still decline to consider these unpreserved arguments. After the Korean Claimants "dropped" the request to apply the re-categorization to all Korean Claimants, the only request for relief left was for prospective re-categorization of South Korea, which was granted. Their motion for re-categorization was properly denied as moot.

With respect to the motion for reversal, the district court properly ruled as follows. If the motion asked that the hold be lifted, that request has been granted, and if the Korean Claimants

sought more, the district court was not the place to look. In their motion, the Korean Claimants requested that "the Court . . . reverse the decision of the [Settlement Facility] in the [August 22, 2011] letter," in which the Claims Administrator informed Mr. Kim of the administrative hold. The Settlement Facility reversed its decision in the August 2011 letter to place a hold on the Korean Claimants' claims when it informed Mr. Kim in January 2014 that the claims would be processed once again, thus providing the requested relief. Providing the requested relief generally moots a case. *See Thomas Sysco Food Servs. v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993).

To the extent the Korean Claimants seek to challenge any substantive decisions of the Claims Administrator with respect to any particular claims, such review is beyond the scope of the plan. "The Plan provides no right of appeal to the Court." *In re Settlement Facility Dow Corning Tr.*, No. 12-10314, 2012 WL 4476647, at *2 (E.D. Mich. Sept. 28, 2012). Certain parties under certain circumstances can seek review of decisions "regarding the interpretation and implementation of the Plan," *In re Clark-James*, No. 08-1633, 2009 WL 9532581, at *2 (6th Cir. Aug. 6, 2009) (order), but even if the Korean Claimants were such parties and this was such a circumstance (and neither appears to be the case), the Korean Claimants did not direct the district court to a provision of the plan that they contend was interpreted or implemented incorrectly.[2]

Beyond their request that the hold be lifted, the Korean Claimants' disagreement is with decisions regarding claims, such as the determination of the veracity of certain affirmative

---

[2] On appeal, the Korean Claimants do point to a provision of the Settlement Facility and Fund Distribution Agreement to support their argument, but it does them no good. Section 10.01 of the Settlement Agreement states, "The Settlement Facility is irrevocable. None of the Released Parties, present or future, or their successors in interest may hold any beneficial interest in, or have any reversion to, the income or corpus of the Settlement Facility." The Korean Claimants appear to argue that pursuant to this provision, the Claims Administrator and the Settlement Facility cannot "revoke" any "operations" or "procedures" that they have established, i.e., cannot change their minds. As the context of this Section suggests, and as the Appellees convincingly explain, "[t]his provision recognizes that . . . the Released Parties may not recoup funds paid into the Settlement Facility and may not have any beneficial interest in the Settlement Fund assets." It does not prohibit the Claims Administrator from doing her job and revisiting the processes or evidence used to determine the eligibility of claimants.

statements used as proof of manufacturer. Those are decisions for the Claims Administrator and the Appeals Judge selected under the terms of the plan, and not the district court. To the extent the Korean Claimants sought reversal of the administrative hold, their requested relief has been granted and the issue is moot. To the extent the Korean Claimants seek review of substantive decisions regarding particular claims, their request is denied as it is contrary to the terms of the plan.

In their reply brief, the Korean Claimants argue that because they never requested that the Claims Administrator remove a "hold," the Claims Administrator's removal of the "hold" does not moot their motion. To be sure, the August 2011 letter from the Claims Administrator did not use the word "hold," and the Korean Claimants did not use the term "hold" in their motion seeking reversal of the Claims Administrator's decision. One could argue that the Claims Administrator did not really place a "hold" on any claims. Rather, the Claims Administrator categorically ceased processing certain claims, but then reversed that decision, making it appear, in hindsight, as though the original decision had been to place these claims on "hold." Regardless, semantics should not obscure the analysis of the Korean Claimants' contention. The Korean Claimants requested that the Claims Administrator reverse its decision, as stated in the August 2011 letter, to categorically stop processing Korean Claims that use particular affirmative statements as proof of manufacturer. The Claims Administrator reversed that decision, mooting that request. Whether one calls the original decision a "hold," as all of the parties do (including the Korean Claimants in their opening brief), or something else is of no consequence.

Finally, the Korean Claimants seek to enforce a purported mediation agreement. When the Korean Claimants filed their notice of appeal, this motion was still pending in the district court

and there was no final order to review.  Accordingly, we lack jurisdiction to consider the merits of this motion.

## III.

For the foregoing reasons, the decision of the district court is affirmed.