NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0097n.06

Case Nos. 21-2665/22-1750/1753/1771

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| IN RE: SETTLEMENT FACILITY DOW CORNING TRUST. | ) | **FILED** |
| _____ | ) ) ) | Feb 22, 2023 DEBORAH S. HUNT, Clerk |
| KOREAN CLAIMANTS, | ) ) | |
|    Interested Parties - Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| DOW SILICONES CORPORATION; DEBTOR'S REPRESENTATIVES; CLAIMANTS' ADVISORY COMMITTEE, | ) ) ) ) | |
|    Interested Parties - Appellees, | ) ) | OPINION |
| FINANCE COMMITTEE, | ) ) | |
|    Movant - Appellee. | ) | |

Before: BOGGS, GIBBONS, and READLER, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Certain residents of Korea with claims related to silicone breast implants (the "Korean Claimants") against Dow Silicones Corporation ("Dow") appeal numerous district court orders in the bankruptcy proceedings concerning such claims. In Case Nos. 21-2665 and 22-1771, we dismiss the appeals in part for lack of jurisdiction and affirm in part. We dismiss the appeal in Case No. 22-1753 as untimely. We affirm the district court in Case No. 22-1750.[1]

---

[1] We note that the Korean Claimants' appeal in Case No. 22-2167 is not yet fully briefed and therefore not ready for review.

I.

We have repeatedly had occasion to summarize the extensive proceedings concerning the bankruptcy of Dow Corning Corporation and settlement of claims related to silicone breast implants, a process now approaching the beginning of its fourth decade. *See, e.g.*, *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002); *In re Settlement Facility Dow Corning Tr.* (*"Settlement Facility I"*), 592 F. App'x 473 (6th Cir. 2015). Most recently and relevantly, we upheld the district court's determination that the Settlement Facility, which was designed to pursue global resolution of the claims, was "virtually guaranteed" to have sufficient funds to fully pay all claims designated as first-priority under the reorganization plan (a category that includes the Korean Claimants' claims) and could therefore begin making payments to second-priority claimants as well. *See In re Settlement Facility Dow Corning Tr.* (*"Settlement Facility II"*), 754 F. App'x 409, 416-17 (6th Cir. 2018).

Before us now are the Korean Claimants' appeals from four district court orders. First, in Case No. 21-2665, the Korean Claimants challenge the district court's order 1) authorizing certain additional payments to second-priority claimants; 2) denying their motion for premium payments; and 3) denying their motion to vacate the district court's earlier order, Closing Order 2, which required them to confirm their addresses as a condition of receiving payments. Second, in Case No. 22-1750, the Korean Claimants challenge the district court's denial of their motion for an extension of the deadline for filing claims where the deadline was a term of the reorganization plan. Third, in Case No. 22-1753, filed more than a month past the thirty-day deadline for filing appeals under Fed. R. App. P. 4(a)(1)(A), the Korean Claimants challenge the district court's entry of Closing Order 5, which closed the claims of certain Korean Claimants who likewise missed various deadlines to confirm their addresses. Fourth, in Case No. 22-1771, the Korean Claimants

challenge the district court's denial of their motion for a stay of its order at issue in Case No. 21-2665.

## II.

Because a litigant's Article III standing affects our subject matter jurisdiction, we consider it de novo. *See Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). We also review a district court's interpretation of the plain terms of a reorganization plan de novo. *See In re Settlement Facility Dow Corning Tr.*, 628 F.3d 769, 772 (6th Cir. 2010). We defer to a district court's reasonable interpretation and enforcement of its own orders. *See Michigan v. City of Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992).

## III.

In Case Nos. 21-2665 and 22-1771, the Korean Claimants contest certain payments from the Settlement Facility that the district court allowed to second-priority claimants. Because the Korean Claimants have not established that those payments injured or might injure them, they lack Article III standing to challenge those aspects of the district court's order.

The "irreducible constitutional minimum of standing" includes three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the party seeking relief "must have suffered an injury in fact" that is both "concrete and particularized" and "actual or imminent" rather than "conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Second, "the injury has to be fairly traceable to the challenged action." *Id.* (cleaned up). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). A litigant must have standing with respect to each form of relief she seeks, *see generally City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and the requirements of standing apply with full force on appeal, *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

Here, distribution of payments to the second-priority creditors might constitute an injury to the Korean Claimants sufficient for Article III standing if there were some likelihood that such distribution would deplete funds that the Korean Claimants would otherwise receive. *But see In re Julien Co.*, 146 F.3d 420, 423 (6th Cir. 1998) (party that was "merely another creditor" not "person aggrieved" by order allowing claim of different creditor). Importantly, though, we have already upheld the district court's previous determination that the Settlement Facility is "virtually guaranteed" to have sufficient funds to pay all first-priority claimants, a category that includes the Korean Claimants. *See Settlement Facility II*, 754 F. App'x at 416-17. The Korean Claimants identify no reason to believe that has changed. Thus, the authorization of certain payments to second-priority claimants has not injured and will not injure the Korean Claimants. Instead, the Korean Claimants' failure to receive payments to which they believe they are entitled is attributable to their failure to provide confirmed addresses in a timely fashion, which is unrelated to the Settlement Facility's payments to second-priority creditors.

The Korean Claimants contend that they have standing under the standards established by our decision in *In re Gibson Group*, *Inc.*, 66 F.3d 1436 (6th Cir. 1995). *Gibson* was not about Article III standing at all, but instead dealt with the circumstances under which a creditor has *derivative* statutory standing to bring certain claims *on behalf of the bankruptcy estate* where the estate itself fails to bring them, which is not what the Korean Claimants are trying to do here. *See id.* at 1440-41. The Korean Claimants fail to develop, and therefore forfeit, any other argument that they have standing to challenge the payments to second-priority creditors. *See Taylor v. Pilot Corp.*, 955 F.3d 572, 582 (6th Cir. 2020) (Thapar, J., concurring in part) ("Although parties cannot waive arguments *against* jurisdiction, they are more than free to waive (or forfeit) arguments *for* it."). Accordingly, the Korean Claimants lack standing to the extent that they challenge the district

court's authorization of payments to second-priority creditors.

As for their challenges to the district court's denial of their motions 1) for premium payments; 2) to vacate the district court's earlier order requiring them to confirm their addresses; and 3) to stay the district court's order to the extent that it concerned 1) and 2), the Korean Claimants have standing because those orders prevent them from receiving payments they otherwise might. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (identifying "monetary harms" among those that "readily qualify" for Article III standing). However, those aspects of the Korean Claimants' appeals fail on the merits because the district court correctly interpreted Closing Order 2 to require the Korean Claimants to confirm their addresses as a condition of receiving payments and permissibly considered the Settlement Facility bound by Closing Order 2, which the Korean Claimants had not appealed. *See* DE 1607, Mem. Op. and Order, Page ID 28628-31 (citing DE 1482, Closing Order 2, 24086-87); *see also Allen Park*, 954 F.2d at 1213.

Accordingly, we dismiss the appeals in Case Nos. 21-2665 and 22-1771 in part for lack of jurisdiction and affirm in part.

IV.

The Korean Claimants also have standing in Case Nos. 22-1750 and 22-1753 because the orders they seek to challenge prevent them from receiving certain payments, *see TransUnion*, 141 S. Ct. at 2204, but those appeals likewise fail for other reasons.

In Case No. 1753, a previous panel has noted that the Korean Claimants' appeal is untimely. CA6 R. 32-2, Order, at 2. While that untimeliness did not affect our jurisdiction because this is a bankruptcy matter, *see id.* at 2-3, it did make the Korean Claimants "unlikely to succeed on the merits," *id.* at 2. This prediction has proven accurate. The Korean Claimants argue that

there was "excusable neglect" for their late filing. CA6 R. 33, Appellant Br., at 21. Like the previous panel, we need not decide whether we might have the power to equitably toll the deadline for filing an appeal in an exceptional case because the Korean Claimants point us to no exceptional circumstances here, instead noting only that their counsel overlooked the relevant order on the district court's docket. *See* CA6 R. 32-2, Order, at 3 (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). We therefore dismiss the appeal in Case No. 1753 as untimely.

In Case No. 22-1750, the district court correctly concluded that the final deadline to file claims was an unambiguous plan term to which settling claimants agreed and which it therefore had no authority to modify. *See In re Clark-James*, No. 08-1633, 2009 WL 9532581, at *2 (6th Cir. Aug. 6, 2009) ("[T]he district court had no authority to modify the Plan[.]"). On appeal, the Korean Claimants again argue that their failure to submit timely claims was "excusable neglect." CA6 R. 27, Appellant Br., at 11. But that standard applies to certain *court* deadlines, not to deadlines included in the unambiguous terms of a reorganization plan to which a claimant has voluntarily agreed. *See* Fed. R. Bankr. P. 3003(c)(3), 9006(b)(1). We therefore affirm in Case No. 22-1750.

## V.

We dismiss in part the appeals in Case Nos. 21-2665 and 22-1771 for lack of jurisdiction and affirm in part. We dismiss the appeal in Case No. 22-1753 as untimely. We affirm the district court in Case No. 22-1750.