[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11364

Non-Argument Calendar

_____

In Re: CENTRO GROUP, LLC
PROHCM HOLDINGS, INC.,

                                                            Debtors.

_____

JOSEPH MARKLAND,

                                                    Plaintiff-Appellant,

*versus*

MELISSA DAVIS, CPA,
as Liquidating Trustee of the bankruptcy estates of Centro Group,
LLC and ProHCM Holdings, Inc.,
CREDITORS COMMITTEE,

LEYVA CAPITAL, LLC,
GIRALDO LEYVA, JR.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20610-KMW,
Bkcy No. 18-bk-23155-AJC

_____

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Appellant Joseph Markland[1] appeals the district court's affirmance of the bankruptcy court's order.  Markland argues that the bankruptcy court failed to apply the correct legal framework when assessing whether to approve a provision of a settlement agreement enjoining claims against third parties related to or arising out of the bankruptcy action.  Appellees, several parties in favor of the settlement agreement, respond that the bankruptcy court's order is factually and legally correct.  Because the bankruptcy court did

_____

[1] Counsel represented Markland at both the bankruptcy and the district court proceedings.  He files this appeal pro se.

not abuse its discretion in approving the settlement agreement, we affirm.

## I.

On April 25, 2018, ProHCM Holdings, Inc. (ProHCM) and Centro Group, LLC (Centro) entered into a merger agreement.[2] Both companies provided businesses with payroll and human resource management services.  Centro specifically processed payroll for its clients by withdrawing money from its clients' bank accounts and disbursing funds to its clients' employees and taxing authorities.

After completion of the merger, ProHCM discovered through a whistleblower that Centro had been misappropriating client funds.  An investigation revealed that Centro officers and directors had misappropriated money from its clients' escrow accounts which held payroll taxes resulting in over 1.7 million dollars in tax liability—excluding penalties and interest.  The Centro officers and directors responsible for the misappropriation of its clients' funds likely included the former CEO of Centro, Christopher Green, as well as former Centro directors Giraldo Leyva, Jr., Jeffrey Hicks, Michael Moran, and Richard Kahle.  Markland, CEO of ProHCM pre-merger, subsequently replaced Green as the CEO of

---

[2] Centro became the operating entity and a wholly owned subsidiary of ProHCM.

both companies shortly before the companies were forced to file for Chapter 11 bankruptcy on October 23, 2018.

During the bankruptcy proceedings, the trustee assigned to the case appointed a committee of creditors (the Committee) holding unsecured claims. Centro and ProHCM initially reached an agreement to address the allocation of their respective assets and liabilities, and the bankruptcy court approved the agreement. Thereafter, Centro and ProHCM determined that they could assert claims against several third parties. Following that determination, Centro, ProHCM, and the Committee reached a proposed settlement with the third parties, including the Centro officers and directors likely responsible for the misappropriation of clients' funds.

As part of the proposed settlement, the parties agreed to a provision—known as a Bar Order—that released third parties from any claims directly or indirectly related to Centro's and ProHCM's respective bankruptcies. Markland, now former CEO of ProHCM and the largest holder of the company's preferred shares, understandably objected to the Bar Order. The basis of his objection was that the Bar Order would prevent him from asserting claims against potentially culpable third parties.[3] Markland was the only party to object to the proposed settlement.

The bankruptcy court ultimately approved the proposed settlement containing the Bar Order over Markland's objections in an

---

[3] It should be noted that Markland has never filed a lawsuit against any of the third parties.

amended and supplemental order.[4]  In doing so, the bankruptcy court applied the factors from *In re Munford*, 97 F.3d 449 (11th Cir. 1996) to specifically assess whether to approve the provision containing the Bar Order.

Markland appealed to the district court, primarily arguing that the bankruptcy court erred in applying the *Munford* factors because it should have instead applied the factors from *In re Seaside Engineering & Surveying, In*c., 780 F.3d 1070 (11th Cir. 2015).  After briefing from the parties, the district court affirmed the bankruptcy court's order, finding that the *Munford* factors as opposed to the *Seaside* factors applied to the set of facts giving rise to the Bar Order.  Markland timely appealed.

## II.

This court sits as a second court of review when a bankruptcy court decision is appealed.  *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018).  The bankruptcy court's legal conclusions are reviewed de novo and its factual findings for clear error.  *Id.*  We review discretionary determinations, including the approval of settlement agreements, for an abuse of discretion.  *Id.*  Under this deferential standard, we "must affirm unless we find that the lower

---

[4] The bankruptcy court initially filed a short order approving the settlement. Shortly after, however, the bankruptcy court issued an amended and supplemental order approving the settlement which included more specifics regarding the Bar Order purposed by Centro, ProHCM, and the Committee barring claims against third parties.

6                    Opinion of the Court                    21-11364

court has made a clear error of judgment, or has applied the wrong legal standard." *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008) (per curiam) (alteration adopted).

III.

The issue on appeal is whether the bankruptcy court abused its discretion when it determined that the assessment of whether to approve the Bar Order is controlled by the *Munford* factors as opposed to the *Seaside* factors. Markland argues that both the bankruptcy court and the district court erred because the *Seaside* factors apply to the Bar Order since Centro and ProHCM filed Chapter 11 bankruptcies as reorganizations. Appellees respond that neither court erred because *Munford* applies where a bar order is essential to a litigation agreement whereas *Seaside* applies where a bar order is presented as part of a plan of reorganization.

In *Munford* and *Seaside*, we described the factors a bankruptcy court should assess when evaluating the appropriateness of a bar order in two different scenarios: one in which a bar order was essential for a litigation settlement agreement and the other in which a bar order was an integral part of a reorganization plan. *Munford*, 97 F.3d at 455; *Seaside*, 780 F.3d at 1077. In *Munford*, a company filed for Chapter 11 bankruptcy after an unsuccessful leveraged buy-out. *Munford*, 97 F.3d at 452. The parties eventually reached a settlement agreement, which contained a bar order permanently enjoining the non-settling defendants from pursuing claims against a third party. *Id.* The bankruptcy court entered an order approving the settlement agreement and bar order, which

the district court affirmed. *Id.* On appeal, the non-settling defendants attacked the bankruptcy court's authority to approve the bar order. *Id.* at 452–53. This court found that bankruptcy courts can "enter bar orders where such orders are integral to settlement in an adversary proceeding." *Id.* at 455. We also provided that certain factors should be assessed to reasonably determine whether a bar order is fair and equitable, including: (1) "the interrelatedness of the claims that the bar order precludes"; (2) "the likelihood of the non-settling defendants to prevail on the barred claim"; (3) "the complexity of the litigation"; and (4) "and the likelihood of depletion of the resources of the settling defendants." *Id.* This court concluded that the bar order was necessary because at least one of the parties "would not have entered into the settlement agreement" without it, and as such, it was "integral" to the settlement. *Id.*

Nearly twenty years later in *Seaside*, an engineering firm filed for Chapter 11 bankruptcy and submitted a reorganization plan which proposed that the firm reorganize and continue operations under a new name. *Seaside*, 780 F.3d at 1075. The plan also included a bar order that prohibited lawsuits against the company (pre- or post-reorganization) and the company's officers related to or arising out of the bankruptcy. *Id.* The bankruptcy court approved the settlement containing the bar order. *Id.* One interested party, a creditor, appealed the approval of the bar order. The district court affirmed, and the creditor further appealed. *Id.* at 1075–76.

We explained that *Seaside* is factually distinguishable from *Munford* because the cases considered non-comparable bar orders. *Id.* at 1076–77. We upheld the bar order in *Munford* because it was integral to reaching a settlement agreement between the parties. *Id.* at 1066. Different from the settlement context in *Mumford*, the bar order at issue in *Seaside* was upheld because it was deemed necessary for the reorganized entity to succeed. *Id.* at 1077 ("Instead of the settlement context in *Munford*, here the releases prevent claims against non-debtors that would undermine the operations of, and doom the possibility of success for, the reorganized entity"). We looked to other circuits for guidance regarding treatment of bar orders in reorganization plans and adopted a seven-factor test used by the Fourth and Sixth Circuits to assess whether such a bar order is appropriate. *Id. Seaside*, 780 F.3d at 1077 (citing *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (listing the seven factors)). After reviewing the bankruptcy court's application of these seven factors, this court held that the bankruptcy court did not abuse its discretion in approving the bar order. *Id.* at 1079–81.

Markland correctly pointed out that both Centro and Pro-HCM filed bankruptcy as Chapter 11 reorganization cases. This, however, is non-determinative of which legal standard applies when assessing bar orders since bankruptcies filed under Chapter 11 are frequently referred to as "reorganization" bankruptcies. Both *Munford* and *Seaside*, for instance, arose out of bankruptcies filed under Chapter 11 yet yielded different results. Instead, the

context and facts underlying the bar order under review determine whether *Munford* or *Seaside* factors apply.

The *Munford* factors apply to bar orders assessed in the settlement context. Such a bar order is appropriate where the parties would not have entered into a settlement agreement without it, and thus it is "integral" to the settlement. The *Seaside* factors apply to bar orders that are specifically within the reorganization context which is evidenced by this court looking to other circuits to assess "unusual cases in which such an order is necessary for the success of the reorganization." *Id.* at 1078–1079. This is also further demonstrated by the language within the *Seaside* factors themselves which reference "reorganization" and the "Plan" several times.

The record demonstrates that this case is more like *Munford* than *Seaside* because the Bar Order under review was integral to settlement. Although reorganization may have been on the table at some point, the purpose of the Bar Order differs from the factual context under *Seaside* because neither ProHCM nor Centro sought to reorganize and continue operations. As such, the purpose of the Bar Order is not to ensure success for a reorganized entity by eliminating liability against third parties but is instead to facilitate a settlement agreement. Because *Munford* controls and Markland did not preserve the argument of whether the bankruptcy court properly applied the Munford factors, the analysis stops here.

The bankruptcy court did not abuse its discretion because it correctly applied the *Munford* factors as opposed to the factors prescribed by *Seaside*.

**AFFIRMED.**